PEOPLE v THOMPSON

Docket No. 73206. Argued June 6, 1985 (Calendar No. 11).—Decided December 23, 1985. Rehearing denied *post,* 1206.

Robert Thompson was convicted by a jury in the Saginaw Circuit Court, Eugene Snow Huff, J., of armed robbery and first-degree felony murder. The Court of Appeals, M. F. CAVANAGH, P.J., and BRONSON, J. (M. J. KELLY, J., dissenting), reversed the murder conviction, holding that the trial court had failed to instruct the jury on the element of malice in the felony-murder charge (Docket No. 26215), and the Supreme Court affirmed, 409 Mich 672 (1980). A second trial was declared a mistrial because of a deadlocked jury. Following a third trial, the defendant was convicted by a jury of felony murder, Robert S. Gilbert, J. The Court of Appeals, ALLEN, P.J., and BEASLEY and CLEMENTS, JJ., affirmed in an unpublished opinion per curiam (Docket No. 62981). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice WILLIAMS, and Justices RYAN and RILEY, the Supreme Court *held:*

A prosecutor may seek to retry a defendant for crimes previously charged where a prior trial resulted in a mistrial because of jury deadlock.

1. Once a jury in a criminal trial is empaneled and sworn, jeopardy attaches and the protection against being placed twice in jeopardy obtains. The protections are not absolute, however,

REFERENCECS FOR POINTS IN HEADNOTES

[1-4] Am Jur 2d, Criminal Law § 303.

Am Jur 2d, Trial § 109.

Propriety of court's dismissing indictment or prosecution because of failure of jury to agree after successive trials. 4 ALR4th 1274.

[2] Am Jur 2d, Criminal Law §§ 258-262.

See the annotations in the ALR3d/4th Quick Index under Former Jeopardy.

[3] Am Jur 2d, Trial §§ 476-480.

See the annotations in the ALR3d/4th Quick Index under Direction of Verdict.

[4] Am Jur 2d, Appeal and Error §§ 797 *et seq.*

See the annotations in the ALR3d/4th Quick Index under Weight and Sufficiency of Evidence.

where there is no final judgment of guilt or innocence. While a defendant has an interest in avoiding repeated prosecutions, the people have an interest in having a complete opportunity to try persons accused of breaking the law. Where a jury fails to agree on a verdict, there is manifest necessity to terminate the trial. Jeopardy does not terminate where a mistrial is declared because of jury deadlock, and thus retrial does not violate the Double Jeopardy Clause.

2. Nor does retrial following jury deadlock violate a defendant's rights to due process or a fair trial. Due process is violated where there is a failure to observe fundamental fairness essential to the concept of justice. In this case, that fundamental fairness was not abridged. The defendant's first trial, resulting in a guilty verdict, was reversed because of improper jury instructions. His second trial was declared a mistrial because of jury deadlock. His third trial resulted in a guilty verdict. The defendant received the full benefits of due process.

3. Due process was not denied in the defendant's third trial where testimony was introduced of an accomplice who had testified originally at the defendant's preliminary examination, but who was unavailable to testify at the defendant's first trial, who did not testify at the second trial, and who was threatened prior to the third trial with revocation of immunity and contempt for refusing to testify. The accomplice was not threatened by anything at the time he testified, the prosecutor promised not to revoke his immunity prior to the trial and did not attempt to influence the content of the testimony, and the testimony at the third trial was consistent with earlier testimony.

4. A denial of a motion for a directed verdict on the ground that evidence was not sufficient need not be reviewed where the trial ends in a mistrial because of jury deadlock. Subsequent retrials are continuations of the same case, and due process is satisfied by appellate review of the sufficiency of the evidence at a retrial.

Affirmed.

Justice BRICKLEY, joined by Justice CAVANAGH, concurring in part and dissenting in part, agreed that retrial following a mistrial because of the inability of a jury to agree on a verdict does not violate the principles of double jeopardy or due process. Justice LEVIN, as well as Justice CAVANAGH, also concurred with Justice BRICKLEY that where a defendant's motion for a directed verdict of acquittal on the ground that the prosecution's evidence is insufficient is denied and the jury

thereafter fails to reach a unanimous verdict, the defendant is
entitled before retrial to appellate review of his challenge of
the sufficiency of the evidence.

Justice LEVIN wrote separately to express disagreement with
the Court on the issue of a hung jury. Although courts, for over
a century, have stated that retrial following a hung jury is not
barred by the Double Jeopardy Clause, a majority of the Court
was of the view that their statements should be reexamined.
The Court in this case does not explain why a defendant's
interest in not being retried after a hung jury is not protected
in the same manner as in other situations where the double
jeopardy bar has been raised. Where a case ends in a hung
jury, the prosecution has had one full and fair opportunity to
convict and has failed to do so. The Court should explain its
disposition of the issue in other than conclusory terms or
dismiss the issue on the ground that leave to appeal was
improvidently granted.

OPINION OF THE COURT

1. CRIMINAL LAW — MISTRIAL — DEADLOCKED JURIES — DOUBLE
   JEOPARDY — DUE PROCESS.

   A prosecutor may seek to retry a defendant for crimes previously
   charged where a prior trial resulted in a mistrial because of
   jury deadlock (Const 1963, art 1, §§ 15, 17).

2. CRIMINAL LAW — MISTRIAL — DEADLOCKED JURIES — DOUBLE
   JEOPARDY — DUE PROCESS.

   Once a jury in a criminal trial is empaneled and sworn, jeopardy
   attaches and the protection against being placed twice in
   jeopardy obtains; jeopardy does not terminate where a mistrial
   is declared because of jury deadlock, permitting retrial (Const
   1963, art 1, §§ 15, 17).

3. CRIMINAL LAW — MISTRIAL — DEADLOCKED JURIES — DOUBLE
   JEOPARDY — DUE PROCESS — SUFFICIENCY OF EVIDENCE.

   A denial of a motion for a directed verdict on the ground that
   evidence was not sufficient need not be reviewed where the
   trial ends in a mistrial because of jury deadlock; subsequent
   retrials are continuations of the same case, and due process is
   satisfied by appellate review of the sufficiency of the evidence
   at a retrial (Const 1963, art 1, §§ 15, 17).

OPINION BY BRICKLEY, J.

4. CRIMINAL LAW — MISTRIAL — DEADLOCKED JURIES — SUFFICIENCY
   OF EVIDENCE.

   *Where a defendant's motion for a directed verdict of acquittal on*

*the ground that the prosecution's evidence is insufficient is*
*denied and the jury thereafter fails to reach a unanimous*
*verdict, the defendant is entitled before retrial to appellate*
*review of his challenge of the sufficiency of the evidence.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Mardi Crawford*) for the defendant.

Amici Curiae:

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Principal Attorney, Research, Training and Appeals, for Wayne County Prosecutor, and *Joseph T. Barberi* for Prosecuting Attorneys Association of Michigan.

BOYLE, J. We granted leave in this case to consider the constitutionality of reprosecution when a previous criminal trial results in mistrial because of a jury deadlock. We hold that retrial in these circumstances does not violate either the Double Jeopardy Clause of the Michigan Constitution, Const 1963, art 1, § 15, or the due process guarantees of the Michigan and United States Constitutions, Const 1963, art 1, § 17, and US Const, Am XIV.

## I. FACTS

Robert Thompson appeals his conviction of felony murder for killing a bartender, Mary Hendry, during an armed robbery. Appellant was initially convicted in a jury trial in August 1975. That conviction was reversed because of improper mal-

ice instructions. *People v Thompson,* 81 Mich App 348; 265 NW2d 632 (1978), *aff'd People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). Thompson was retried in May 1981. That trial resulted in a jury deadlock, and a mistrial was declared. Appellant's second retrial began in September 1981, and ended on October 8, 1981, with a jury verdict of guilty. The Court of Appeals affirmed defendant's conviction, and he appealed to this Court.

## II. DOUBLE JEOPARDY UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS

Appellant's primary claim is that the Michigan Double Jeopardy Clause, art 1, § 15, prohibits retrial after a mistrial declared due to the jury's inability to decide on a verdict. We begin with a review of federal double jeopardy law since a similar argument was recently considered by the United States Supreme Court in *Richardson v United States,* 468 US 317; 104 S Ct 3081; 82 L Ed 2d 242 (1984).

The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The federal Double Jeopardy Clause protects the finality of judgments, *Crist v Bretz,* 437 US 28, 33; 98 S Ct 2156; 57 L Ed 2d 24 (1978), and the individual's interest in not being repeatedly subjected to prosecution for the same offense. *Green v United States,* 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957); *Arizona v Washington,* 434 US 497, 503-504; 98 S Ct 824; 54 L Ed 2d 717 (1978). Once jeopardy has attached, the protections of the Double Jeopardy Clause are triggered. Jeopardy attaches in a criminal jury trial once the jury is empaneled and sworn. *Crist, supra.* The federal standard of when jeopardy attaches is applicable to the states. *Crist, supra.*

Even though jeopardy has attached, the protections of the Double Jeopardy Clause are not absolute where there has been no final judgment of guilt or innocence. As this Court stated in a review of the federal law of jeopardy,

> Where, however, the trial or proceeding does not end in a judgment of acquittal or conviction . . . the constitutional protections are not absolute. The defendant has an interest in avoiding harassment from repeated proceedings and in having his guilt decided by the jury impaneled to try him. The people, however, have a competing interest in having one complete opportunity to try those accused of breaking the law. . . .
>
> If the trial or proceeding ends without the defendant's consent, further prosecution is generally barred; the defendant's "valued right to have his trial completed by a particular tribunal" was taken from him, and reprosecution smacks of harassment. An exception is recognized, and retrial permitted, where "manifest necessity" compelled the termination of the first trial or proceeding. [Citations omitted. *People v Anderson*, 409 Mich 474, 483-484; 295 NW2d 482 (1980).]

One long-recognized instance in which "manifest necessity" requires the termination of a trial is where the jury fails to agree on a verdict. *Arizona v Washington, supra,* p 509.[1] In *Richardson v*

---

[1] While contemporary cases base the requirement that mistrial be justified by manifest necessity before retrial is permissible on double jeopardy grounds, see, *e.g., Arizona v Washington,* 434 US 497, 498, 505; 98 S Ct 824; 54 L Ed 2d 717 (1978); *Illinois v Somerville,* 410 US 458, 459; 93 S Ct 1066; 35 L Ed 2d 425 (1973), the historical basis for the claim that retrial is barred by an improperly declared mistrial is separate and distinct from the original source of the federal Double Jeopardy Clause. *Crist v Bretz,* 437 US 28, 40-49; 98 S Ct 2156; 57 L Ed 2d 24 (1978) (Powell, J., *dissenting*). The federal Double Jeopardy Clause, originally intended to bar retrial after an actual verdict of acquittal or conviction, was drawn from the English pleas in bar of *autrefois acquit* and *autrefois convict. Crist, supra,* p 41 (Powell, J., *dissenting*). The rule that retrial is only permissible when a mistrial

*United States, supra,* the United States Supreme
Court recently reconsidered whether retrial after a
mistrial declared due to jury deadlock violates the
federal Double Jeopardy Clause. The petitioner
argued that the sufficiency of the evidence at the
mistrial required appellate review before subse-
quent retrial because if there was insufficient evi-
dence, the Double Jeopardy Clause would bar sub-
sequent retrial. *Id.,* p 321. The *Richardson* Court,
noting society's interest in a *complete* opportunity
to convict wrongdoers in a full and fair trial, held
that jeopardy does not terminate upon mistrial
caused by jury deadlock and that the Double Jeop-
ardy Clause is therefore not implicated by a subse-
quent retrial:

> The Government, like the defendant, is entitled
> to resolution of the case by verdict from the jury,
> and jeopardy does not terminate when the jury is
> discharged because it is unable to agree. Regard-
> less of the sufficiency of the evidence at petition-
> er's first trial, he has no valid double jeopardy
> claim to prevent his retrial. [*Richardson,* p 326.]

Thus, the federal Double Jeopardy Clause does not
prohibit the retrial challenged in the instant case.[2]

is declared due to manifest necessity was adopted in *United States v
Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824). This was based upon a
discretionary English common-law rule of jury practice which al-
lowed, but did not require, the trial court to prohibit retrial where
the government had a losing case, discharged the jurors, and rein-
dicted the defendant. *Crist, supra,* pp 41-43.

[2] But see Findlater, *Retrial after a hung jury: The double jeopardy
problem,* 129 U Pa L R 701 (1981). Professor Findlater argues that
*United States v Perez,* n 1 *supra,* the case cited for over 150 years to
justify reprosecution after a mistrial is declared due to "manifest
necessity," dealt with the common-law rules governing when mistrials
were permissible rather than whether a subsequent retrial violates
the Double Jeopardy Clause of the United States Constitution. Findla-
ter, *supra,* pp 702-710. Reasoning that *Perez* is the faulty bedrock of
later decisions upholding the constitutionality of retrials after jury
deadlock, Professor Findlater advocates analyzing the issue under

Appellant argues here that the Michigan Double Jeopardy Clause, Const 1963, art 1, § 15, should be read as prohibiting retrial after a mistrial caused by jury deadlock. It is well-recognized that state constitutions can provide greater protections than those afforded by the United States Constitution. *Cooper v California,* 386 US 58, 62; 87 S Ct 788; 17 L Ed 2d 730 (1967); *PruneYard Shopping Center v Robins,* 447 US 74, 81; 100 S Ct 2035; 64 L Ed 2d 741 (1980); *Mesquite v Aladdin's Castle, Inc,* 455 US 283, 293; 102 S Ct 1070; 71 L Ed 2d 152 (1982).

The issue thus is whether art 1, § 15 should be so construed. After careful consideration, we are unable to conclude that the Michigan Constitution may properly be interpreted to preclude retrial after a mistrial declared because of the jury's inability to reach a verdict.

The Michigan Double Jeopardy Clause, Const 1963, art 1, § 15, provides:

> No person shall be subject for the same offense to be twice put in jeopardy.

The necessary starting point for the determination of appellant's claim rests in ascertaining the intent of the framers and the people who adopted

contemporary double jeopardy policy. She posits that the deadlocked jury cases "involve a group of defendants whose guilt is not apparent and who, in all probability, have a higher percent of innocents among them than do accuseds in general." *Id.,* p 735. Professor Findlater distinguishes retrial after successful appeal by the defendant (on grounds other than sufficiency of the evidence) on the basis that the repose interest of these defendants is not as weighty: "When there has been no indication of factual innocence, the anxiety and expense of a second trial must be endured." *Id.,* p 730 (citations omitted). Professor Findlater concludes that retrial after jury deadlock violates the federal Double Jeopardy Clause primarily because of the undue risk of unjust conviction. *Id.,* pp 732-733. *Quaere:* Does a deadlocked jury imply anything with respect to the guilt or innocence of the defendant? See *Burks v United States,* 437 US 1, 15; 98 S Ct 2141; 57 L Ed 2d 1 (1978); *United States v Scott,* 437 US 82, 98, n 11; 98 S Ct 2187; 57 L Ed 2d 65 (1978).

the provision. *Pfeiffer v Detroit Bd of Ed,* 118 Mich 560, 564; 77 NW 250 (1898).

Before adoption of the 1963 Constitution, the relevant clause in the 1908 Constitution read:

> No person, after acquittal upon the merits, shall be tried for the same offense. [Const 1908, art 2, § 14.]

The same language was contained in the 1850 Constitution, art 6, § 29. On its face, this language suggests that the protections of the clause were only triggered—that is, jeopardy attached—upon "acquittal on the merits." However, this Court had consistently interpreted the Michigan Double Jeopardy Clause as providing that jeopardy attaches when the jury is empaneled and sworn. *People v Schepps,* 231 Mich 260; 203 NW 882 (1925); *People v Tillard,* 318 Mich 619; 29 NW2d 111 (1947). Thus, the judicial interpretation of Const 1908, art 2, § 14, while consistent with federal double jeopardy law, offered far broader protections for defendants than the plain language of the clause would seem to reflect.

The committee comment, as revised by the Committee on Declaration of Rights, Suffrage, and Elections, to what was ultimately adopted[3] as Const 1963, art 1, § 15, indicates that the language of § 15 was changed to make it clearly consistent with the language of the federal Double Jeopardy Clause and the practice of Michigan courts of construing the Michigan provision as providing the broader protections of the federal clause:

> The foregoing change in section 14 involves the substitution of the double jeopardy provision from

---

[3] Art 1, § 15, was originally presented to the Constitutional Convention as § 14.

the Constitution of the United States (except for the deletion of the obsolete words of "life or limb") in place of the original provision which merely prohibits retrial after "acquittal upon the merits." The former language, the committee points out, has been consistently construed by the Michigan supreme court to mean something quite different than the words on the surface appear to connote. Taken literally, the words appear to say that there is no double jeopardy until a trial has run its course complete to acquittal. In fact, however, the Michigan courts have followed the federal rule on double jeopardy. The new language thus appears to be consistent with the actual practice of the courts in Michigan. [1 Official Record, Constitutional Convention 1961, p 468.][4]

The convention debate also reveals that the change in language was not meant to make a substantive change in existing law:

It has been explained here several times that this does not change the law of the state as it is now. However, if you read the original provision, it might be difficult to understand why the supreme court has ruled that it means what we are putting in here now. In other words, it all probably revolves around the fact that the supreme court says when a jury has been sworn or a witness has been sworn, he is in jeopardy, and he is in jeopardy whether you change the language or not, in fact. [Id., p 543 (Mr. Stevens).]

Other comments during the convention show that

---

4 The final Convention Comment to Const 1963, art 1, § 15, states:

"This is a revision of Sec. 14, Article II, of the present [1908] constitution. The new language of the first sentence involves the substitution of the double jeopardy provision from the U.S. Constitution in place of the present provision which merely prohibits 'acquittal on the merits'. This is more consistent with the actual practice of the courts in Michigan." 2 Official Record, Constitutional Convention 1961, p 3364.

there was no intent to bar retrial after mistrials caused by jury deadlock or manifest necessity:

> [The proposed clause] does not apply to a hung jury because the idea is that you go on with the same case . . . . [*Id.*, p 542 (Mr. Danhof).]
>
> To guard against another possible misunderstanding that has been touched on perhaps not quite sufficiently, if a mistrial occurs; if a juror becomes sick and the defendant is not agreeable or the prosecutor is not agreeable to completing the trial with the remaining jurors; if it is found out during the trial that some juror who has been accepted was in fact disqualified; if something else occurs which justifies the court, for good reason, declaring a mistrial, that is not necessarily the end of the case. A new jury can be empaneled and the case then carried on and completed. [*Id.*, p 544 (Mr. Dehnke).]

This Court has long recognized that our Double Jeopardy Clause does not prohibit retrial after a court discharges a jury because, under all the circumstances, there was manifest necessity for the mistrial or the ends of public justice would otherwise be defeated.[5] *In re Ascher,* 130 Mich 540, 547; 90 NW 418 (1902); *People v Johnson,* 396 Mich 424, 431; 240 NW2d 729 (1976). Likewise, we have consistently held that retrial after a mistrial caused by jury deadlock does not violate the Michigan Constitution or the United States Constitution. *People v Harding,* 53 Mich 481, 484-488; 19

---

[5] Regardless of criticism of the early federal case law used to support the constitutionality of retrial after mistrials, see n 1, we think that the development of the manifest necessity doctrine in this state represents an important policy judgment balancing the rights of society and of defendants. If there is no manifest necessity for declaring a mistrial, double jeopardy bars retrial as a matter of fairness to a defendant's interests in avoiding multiple prosecutions. If there was manifest necessity and sufficient evidence to avoid a directed verdict, retrial is necessary to protect society's interest in a full and fair trial of those accused of crimes.

NW 155 (1884); *People v Hall,* 396 Mich 650, 655; 242 NW2d 377 (1976). Appellant Thompson urges us to abandon this rule and hold that the prosecution is entitled only to one opportunity to convince a jury that a defendant is guilty beyond a reasonable doubt and that jeopardy terminates when a jury "fails to return a verdict of guilty after a full and fair opportunity for the prosecution to present its case."

However, the history surrounding the framing of art 1, § 15 affords no indication that either the framers of the constitution or the people of Michigan intended to prohibit retrial where the original jury cannot agree on a verdict. This has never been the rule in Michigan. Those who draft a constitution are presumed to be aware of existing law and judicial construction and to act in light of that knowledge. *Saginaw v Saginaw Policemen & Firemen Retirement System Trustees,* 321 Mich 641, 647-648; 32 NW2d 899 (1948). A decision to constitutionally require acquittal upon the basis of one juror's vote, rather than the unanimous vote of the jury, would have been such a marked change in the law as to elicit major debate among the delegates to the Constitutional Convention as well as the public at large. Rather than evidencing such intent, the convention debate shows that the framers intended no bar to retrial after a mistrial caused by jury deadlock or other manifest necessity. Therefore, this Court declines to overrule the longstanding view that double jeopardy does not prohibit retrial in cases where a mistrial is ordered because the jury cannot agree on a verdict.

Furthermore, the policies involved in the countervailing interests of defendants and society do not mandate such an interpretation of art 1, § 15. In another context, this Court recently observed that the right to be free from self-incrimination

"should be construed to effect a practical and beneficial purpose." *Paramount Pictures Corp v Miskinis,* 418 Mich 708, 728; 344 NW2d 788 (1984) (quoting *In re Watson,* 293 Mich 263, 275; 291 NW 652 [1940]). We think the clause at issue here, art 1, § 15, should also be "construed to effect a practical and beneficial purpose." As the United States Supreme Court recognized in *Richardson, supra,* both society and the individual defendant have an interest in a fair trial resulting in a jury verdict. While a defendant may well have a personal interest in obtaining acquittal by a less than unanimous verdict, such an interest is not protected by the Michigan Constitution. Absent an infringement of one of a defendant's protected rights, the people of Michigan are entitled to a final resolution of criminal jury trials by the completion of the judicial process—the rendition of a jury verdict of guilt or innocence. Society has a strong interest in obtaining a final judgment. The defendant's interests "in avoiding harassment from repeated proceedings and in having his guilt decided by the jury impaneled to try him," *People v Anderson, supra,* pp 483-484, are protected by an absolute bar against reprosecution following acquittal on the merits, *United States v Scott,* 437 US 82, 91, 96; 98 S Ct 2187; 57 L Ed 2d 65 (1978), by the principle that jeopardy bars retrial after a reversal based on insufficiency of the evidence, *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), and by the requirement that a mistrial be prompted by manifest necessity before reprosecution is permissible. *People v Johnson, supra.*

In light of these considerations, we hold that reprosecution after a mistrial caused by the failure of a jury to reach a verdict does not violate art 1, § 15 of the Michigan Constitution. We note that several other state supreme courts have rejected

similar interpretations of their state constitutions. See, *e.g., State v Russell,* 101 Wash 2d 349; 678 P2d 332 (1984); *In re Anderson,* 457 So 2d 446, 448-449 (Ala, 1984); *State v Moriwake,* 65 Hawaii 47, 54-55; 647 P2d 705 (1982).

## III. DUE PROCESS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTIONS

Appellant Thompson asserts that retrial after jury deadlock violates his right to due process and a fair trial under art 1, § 17 of the Michigan Constitution and the Fourteenth Amendment to the United States Constitution.[6] He also asserts that the circumstances under which a prosecution witness testified at his third trial violated due process.

Thompson's accomplice in the robbery, Robert Smith, was granted immunity from prosecution in 1974. Smith, a police informant, testified at a preliminary examination in 1975 that appellant Thompson repeatedly shot Mary Hendry during the bar robbery. When the police were unable to locate Smith for appellant's first trial in 1975, Smith's preliminary examination testimony was admitted. The 1975 trial resulted in a jury verdict of guilty, which was later overturned on appeal because of improper jury instructions.

At the time of Thompson's second trial in May 1981, Smith was imprisoned on an unrelated charge and was available as a witness. However, the prosecutor decided not to call him as a witness after Smith indicated that he did not remember anything about the matter, that the prosecutor should not call him, and that he wanted Thompson

---

[6] The Fourteenth Amendment provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

to get off. The May 1981 jury trial ended in a mistrial when the jury was unable to agree on a verdict.

After the May 1981 trial, the prosecutor moved to revoke Smith's immunity. At the hearing on that motion, Smith denied having said that he wanted Thompson to get off and that the prosecutor should not call him as a witness. He did say that his previous testimony against Thompson had not made his time in prison any easier and that he was reluctant to testify against appellant again. Smith also said that he had refreshed his recollection of the crime by reviewing his preliminary examination testimony and that he was prepared to testify at defendant's third trial. Smith reiterated that Thompson had shot the barmaid. The Court denied the prosecutor's petition to revoke immunity, but later held Smith in contempt for failing to testify. At the contempt hearing, the prosecutor represented that he would not thereafter try in any way to revoke Smith's immunity or to recharge him with armed robbery and felony murder arising out of Hendry's death.

At the third trial, Smith testified that Thompson had planned the robbery, obtained the gun, and shot the victim during the robbery. Smith's immunity, his criminal record, and his employment as a police informant were brought out on direct and cross-examination. Other witnesses testified to incriminating statements made by Thompson after the murder and to how Thompson obtained the murder weapon. After deliberation, the jury found Thompson guilty of first-degree felony murder.

We turn first to Thompson's claim that retrial following jury deadlock violates the Michigan and federal Due Process Clauses. A federal due process argument was not raised in *Richardson v United States, supra.* However, we are not aware of any

United States Supreme Court decision holding that retrial following a properly declared hung jury mistrial violates the federal Due Process Clause. Likewise, this Court has never held that such a retrial violates the Const 1963, art 1, § 17 guarantee that no person may "be deprived of life, liberty, or property, without due process of law."

Due process of law is violated when there is a "failure to observe that fundamental fairness essential to the very concept of justice." *Dodge v Detroit Trust Co,* 300 Mich 575, 618; 2 NW2d 509 (1942). Under the facts of Thompson's case, fundamental fairness was not abridged by the retrial. Appellant's first trial resulted in a jury verdict of guilty, which was reversed due to improper jury instructions. At the second trial, the jury was unable to agree upon a verdict. At the third trial, Thompson was convicted of first-degree felony murder. While there may be cases in which repeated retrials after repeated jury deadlock might be so fundamentally unfair as to violate the due process guaranteed by Const 1963, art 1, § 17, or the Fourteenth Amendment to the United States Constitution, this case is not one of them. The mere fact that the prosecution used Smith at the second retrial, but not at the first retrial, does not alter the fact that Thompson received the full benefits of due process of law.

Appellant also asserts that he was denied due process of law because the prosecutor intimidated Smith into testifying at the third trial and that this alleged intimidation was insufficiently disclosed to the jury. The Court of Appeals found, and we agree, that there was no violation of appellant's rights:

> Smith was simply not being threatened with anything at the time he testified. The prosecutor

promised not to seek to revoke Smith's immunity prior to trial. Smith's version of the murder remained consistent from the 1975 preliminary examination, through the entrapment hearings, and through trial. The prosecutor did not attempt to influence the content of his testimony. Given these circumstances, we decline to find error on this issue.

Smith's testimony was not changed by any action of the prosecutor, and the jury was made aware by both the prosecutor and defense counsel that Smith was testifying in exchange for a grant of immunity. Under these circumstances, there was no violation of due process under either art 1, § 17 or the Fourteenth Amendment to the United States Constitution.

IV. SUFFICIENCY OF THE EVIDENCE AT THE MISTRIAL

Appellant urges that if neither art 1, § 15 nor art 1, § 17 bars a subsequent retrial after a mistrial due to jury deadlock, we must remand this case to the Court of Appeals for a determination of whether the evidence at Thompson's second trial, which ended in mistrial, was sufficient to survive the motion for a directed verdict.

The United States Supreme Court in *Richardson, supra,* found that the federal Double Jeopardy Clause does not require appellate review of the sufficiency of the evidence in a trial which ends in mistrial due to jury deadlock. According to *Richardson,* a defendant's original jeopardy continues through a subsequent retrial rather than terminating with an order of mistrial. *Id.,* p 326.

After consideration of this issue, we hold that neither art 1, § 15 nor art 1, § 17 requires appellate review of the sufficiency of the evidence at a trial which ends in mistrial because of jury dead-

lock. The general view of a hung jury mistrial has
been that it is essentially a nullity and that the
subsequent retrial determines a defendant's guilt
or innocence. Our review of the framers' intent
concerning art 1, § 15 and hung jury mistrials
reveals that the framers saw subsequent retrials
as a continuation of the same case. *Ante,* p 128.
No contrary evidence exists to indicate that the
framers of the constitution or the people who
adopted art 1, § 15 intended a different result. Due
process in this situation is satisfied by the subse-
quent retrial and appellate review of the suffi-
ciency of the evidence at that retrial.

Therefore, we hold that there is no requirement
under the Michigan Constitution for appellate re-
view of a trial court's denial of a motion for
directed verdict based upon the sufficiency of the
evidence at a trial which ends in mistrial due to
the jury's inability to reach a verdict.[7] Of course,
where a trial court grants a motion for dismissal
on the basis of insufficiency of the evidence before
a mistrial is declared, that constitutes an acquittal
which bars retrial. *Cf. Sanabria v United States,*
437 US 54; 98 S Ct 2170; 57 L Ed 2d 43 (1978).

## V. CONCLUSION

We hold that reprosecution after a mistrial de-
clared because of jury deadlock violates neither
the double jeopardy nor the due process protec-

---

[7] In *Berry v Commonwealth,* 393 Mass 793; 473 NE2d 1115 (1985),
the Massachusetts Supreme Judicial Court held, on the basis of the
Massachusetts common law of jeopardy, that appellate review of the
sufficiency of the evidence at a hung jury mistrial is required before a
subsequent retrial. Since there is no similar Michigan common law of
jeopardy, we reject the Massachusetts approach. See also *Brandley v
Texas,* 691 SW2d 699, 701 (Tex Crim App, 1985) (review of sufficiency
of evidence at hung jury mistrial not required under Texas Constitu-
tion); *State ex rel Forsyth v District Court,* 701 P2d 1346 (Mont, 1985)
(retrial after hung jury mistrial does not violate Montana Constitu-
tion because original jeopardy continues).

tions of the Michigan Constitution, Const 1963, art 1, §§ 15, 17. Furthermore, the use of Smith's testimony in Thompson's third trial did not violate due process under the Michigan Constitution, Const 1963, art 1, § 17, or the United States Constitution, US Const, Am XIV. Finally, neither art 1, § 15 nor art 1, § 17 requires appellate review of a trial court's denial of a motion for directed verdict based on the sufficiency of the evidence when the trial ends in mistrial due to jury deadlock.

Appellant raised several other arguments in this Court and in the Court of Appeals. We have considered these arguments and find that they warrant no further consideration. The judgment of the Court of Appeals is affirmed.

WILLIAMS, C.J., and RYAN and RILEY, JJ., concurred with BOYLE, J.

BRICKLEY, J. (*concurring in part and dissenting in part*). I concur in that portion of my colleague's opinion which holds that retrial, following a mistrial because of the inability of the jury to agree on a verdict, violates neither the principles of double jeopardy nor due process. However, I cannot agree with the majority's holding that, when a defendant unsuccessfully moves for a directed verdict of acquittal based upon the legal insufficiency of the prosecution's evidence and the jury thereafter fails to reach a unanimous verdict, the trial judge's denial of the directed verdict motion is not subject to appellate review. I would hold that the defendant is entitled to appellate review of his sufficiency of the evidence claim before retrial.

I

When faced with a motion for a directed verdict

of acquittal following the close of the prosecutor's case, due process requires a trial judge to review the evidence presented in the light most favorable to the prosecution and to determine whether a rational trier of fact could find that all elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

However, the majority today denies defendant any review whatsoever of the sufficiency of the prosecution's evidence in a trial in which the prosecutor was unable to convince all members of the jury of defendant's guilt beyond a reasonable doubt. This action confers unbridled discretion upon the trial court because its decision is never subject to appellate review. Since it would violate due process to deny review of a sufficiency of the evidence motion in a trial where a guilty verdict is rendered, I fail to see why the denial of review in a trial resulting in a jury deadlock is any less of a constitutional deprivation. I would hold that the Due Process Clause of the Michigan Constitution[1] requires a review of a defendant's directed verdict motion before retrial.

## II

The Supreme Court in *Richardson v United States,* 468 US 317; 104 S Ct 3081; 82 L Ed 2d 242 (1984), has rejected, on federal constitutional grounds, a defendant's contention that an appellate court must rule on the sufficiency of the evidence from his first trial which resulted in a deadlocked jury. Under the federal constitution, therefore, a defendant is not entitled to a review of the sufficiency of the evidence at the first trial, even after retrial resulting in conviction. However,

[1] Const 1963, art 1, § 17.

I find the reasoning of Justice Brennan's separate opinion compelling:

> [A] defendant who is constitutionally *entitled to an acquittal* but who fails to receive one—because he happens to be tried before an irrational or lawless factfinder or because his jury cannot agree on a verdict—is worse off than a defendant tried before a factfinder who demands constitutionally sufficient evidence. Indeed, he is worse off than a *guilty* defendant who is acquitted due to mistakes of fact or law. [*Id.,* p 327 (Brennan, J., *concurring in part and dissenting in part*).]

The Massachusetts Supreme Court, in *Berry v Commonwealth,* 393 Mass 793; 473 NE2d 1115 (1985), declined to follow *Richardson* and held that a defendant is entitled to appellate review of the legal sufficiency of the evidence from his first trial prior to retrial:

> We hold, therefore, that when the Commonwealth has failed to present evidence legally sufficient to support a conviction, and the defendant has moved for a required finding of not guilty, jeopardy terminates when a judge declares a mistrial after the jury fails to agree on a verdict. Furthermore, because double jeopardy principles prohibit *trying* a defendant twice for the same offense [citations omitted], the defendant is entitled to a review of the legal sufficiency of the evidence before another trial takes place.

The *Berry* Court based its holding on the Massachusetts common law of jeopardy, and the majority correctly notes that there exists no comparable common law of jeopardy in this state. *Ante,* p 135. However, there do exist in our constitution guarantees of due process and against double jeopardy, and state courts are free to invoke greater protec-

tions under their own constitutions than are afforded under comparable federal provisions. *Ante,* p 125. I would invoke those guarantees to require appellate review for the reasons enunciated by Justice Brennan in *Richardson* and by the Court in *Berry.*

## III

A defendant in a criminal trial essentially has two chances for acquittal. First, he may move for a directed verdict of acquittal after the prosecution rests on the ground that the evidence presented is insufficient as a matter of law to support a guilty verdict. Second, he may be found not guilty by the factfinder on the ground that the prosecution has not proven him guilty beyond a reasonable doubt. Under the majority opinion today, however, a defendant who encounters the misfortune of jury deadlock following a trial in which he has already argued that the prosecution's evidence is insufficient to convict him is left with the worst of both worlds—without an acquittal, and without the right to appeal the only other issue which might bring an acquittal, namely, the sufficiency of the evidence. He must therefore endure the anxiety and expense of another trial without having any chance to have an appellate court determine whether he should have been retried at all.[2] If indeed defendant in this case had been entitled to acquittal because of insufficiency of evidence, he is

[2] That a similar motion made in defendant's retrial would be subject to appellate review following his conviction does not, in my view, serve to satisfy the guarantee of due process. The prosecution may, as a result of the jury deadlock, recognize the weaknesses of its case and strive to correct them on retrial. Therefore, the fact that the prosecution's case was legally sufficient at the second trial does not *ipso facto* render defendant's sufficiency challenge from the first trial meritless.

now worse off than he would have been had he been convicted in the first trial.

## IV

The majority today, and I believe correctly, to some degree subordinates a defendant's right to have his guilt or innocence determined by one jury to the state's interest in having one complete opportunity to convict those accused of committing crimes in those cases where a jury is unable to agree upon a verdict. However, in those cases where a sufficiency of the evidence issue has been raised and thereby preserved for review in the event of a conviction, the majority precludes any appellate review whatsoever of the issue when the jury is unable to agree on exactly the same question; *i.e.*, whether the evidence is sufficient to support a verdict of guilty. This preclusion of appellate review, on top of the burden resulting from a second trial, certainly adds to the defendant's jeopardy, if it does not double it. I believe that allowing a defendant to have an appellate court rule on the sufficiency of the evidence from the first trial before retrial best ensures the preservation of both a defendant's interest in having his case decided by one factfinder and the prosecutor's competing interest in having one complete opportunity to convict accused criminals.

For the above-stated reasons, I respectfully dissent from part IV of the majority opinion.

LEVIN and CAVANAGH, JJ., concurred with BRICKLEY, J.

LEVIN, J. I have signed Justice BRICKLEY's opinion to indicate my agreement with the view there stated that Thompson is entitled to appellate re-

view of his sufficiency of the evidence claim before retrial. I write separately to express my disagreement with the disposition of the hung jury issue.

This Court granted leave to appeal to consider the question whether retrial following a hung jury is barred by the Double Jeopardy Clause. We were aware that courts, including this Court, for nearly a century have been stating that it is not. A majority of the Court was, however, of the view that these statements should be reexamined.

The United States Supreme Court, in *Green v United States,* 355 US 184, 187-188; 78 S Ct 211; 2 L Ed 2d 199 (1957), identified the interests of the defendant protected by the Double Jeopardy Clause:

> [T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

The opinion of the Court states that

> [t]he defendant's interests "in avoiding harassment from repeated proceedings and in having his guilt decided by the jury impaneled to try him," *People v Anderson* [409 Mich 474, 483-484; 295 NW2d 482 (1980)], are protected by an absolute bar against reprosecution following acquittal on the merits, *United States v Scott,* 437 US 82, 91, 96; 98 S Ct 2187; 57 L Ed 2d 65 (1978), by the principle that jeopardy bars retrial after a reversal based on insufficiency of the evidence, *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), and by the requirement that a mistrial be prompted by manifest necessity before reprosecu-

tion is permissible. *People v Johnson* [396 Mich 424; 240 NW2d 729 (1976)].[1]

This does not explain why a defendant's interest in not being retried after a hung jury is not similarly protected. The prosecution in a hung jury case has had one full and fair opportunity to convict and has failed to do so. The opinion of the Court does not explain why a defendant's interests in avoiding the embarrassment, expense, ordeal, anxiety and insecurity of a second trial, and enhanced possibility of conviction although innocent following a second trial, are protected in some situations, but not where there has been a hung jury.

The Court should explain, other than in conclusory terms, its disposition of the hung jury issue or dismiss this aspect of Thompson's appeal on the basis that leave to appeal was improvidently granted.

---

[1] *Ante,* p 130.