Donald Wayne **SULLIVAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–92–01111–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 3, 1994.

Rehearing Denied April 5, 1994.

William F. Carter, Madisonville, for appellant.

David S. Barron, Anderson, for appellee.

Before WILSON and PRICE,* JJ.

## OPINION

O'CONNOR, Justice.

This case presents a serious question about the application of the provision of the fifth amendment to the United States Constitution, which declares no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...."[1]

Donald Wayne Sullivan, the appellant, filed a pretrial application for writ of habeas corpus alleging the double jeopardy clause of the United States Constitution would be violated by trying him a third time for murder. After receiving evidence at hearing, the trial court denied the appellant habeas corpus relief. We affirm.

### Fact summary

The appellant was indicted for murder in May of 1990. Three mistrials have been declared in this case. The first time the case was called to trial, July 16, 1991, the trial court declared a mistrial during voir dire selection because a juror made a statement that contaminated the panel. The second time the case was called to trial (the *first* trial[2]), July 24, 1991, the trial court granted a mistrial on August 14, 1991, because the jury was deadlocked (nine to three for conviction) after three weeks of trial, 13 hours of deliberations, and an *Allen*[3] charge. The third time the case was called to trial (the *second* trial), January 15, 1992, the trial court granted a mistrial on February 2, 1992, because the jury was deadlocked (nine to three for conviction), after three-and-a-half weeks of trial, 10 hours of deliberations, and an *Allen* charge. The defense moved for both mistrials.

The prosecutor admitted the second trial was improved, from the State's perspective, in a number of respects because of the first trial. One of the most disputed and important issues at the first trial was whether Dave Stallings, the victim, had ever met or seen the appellant before the day of the shooting. At the first trial, after the appellant introduced evidence that challenged the prosecutor's evidence on this issue, the prosecutor called a witness, Lory Hass, to rebut the appellant's evidence. At the second trial, the prosecutor called Hass as part of his case-in-chief. The prosecutor also admitted that at the second trial he introduced evidence he had not used at the first trial—two witnesses, Pat Kelly and Gene Henderson, video camera experts. Both witnesses were used to attack the appellant's evidence from the first trial.

Regarding the upcoming trial (the *third* trial), the prosecutor testified at the habeas corpus hearing that his strategy will be different than at the earlier trials, and he plans to use additional witnesses and additional scientific evidence. He said he had not decided which additional witnesses and what evidence to use. When asked to describe the additional evidence, he said some of the addi-

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. The appellant filed this habeas action complaining of violations of the fifth and fourteenth amendments to the United States Constitution. The appellant did not raise any issues under the Texas Constitution.

2. We call the trial that resulted in the second mistrial the "first trial" because it was the first full trial at which evidence was received.

3. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge is delivered to a deadlocked jury to encourage the jurors to show deference to the opinion of the majority of jurors. *Muniz v. State,* 573 S.W.2d 792, 794 n. 4 (Tex.Crim.App.1978).

tional evidence involved ballistics tests, but he refused to describe his other evidence. He admitted he did not use the additional (undisclosed) scientific evidence at the first two trials because he did not have it. The prosecutor said he hoped the testimony from the witnesses called at the first two trials would "be a little more convincing" at the third trial. The prosecutor admitted he told the press he would try this case 30 times, if necessary. At the hearing, the prosecutor would not say how many times he would try this case. For the third trial, the State has received a change of venue.

In summary, the State has not been able to convince a jury to convict the appellant during two trials even though it has presented evidence for more than six weeks and the court has twice given the jury an *Allen* charge. The juries deadlocked after a total of 23 hours of deliberations. The appellant argues it is not fair to try him again.

■ In his only point of error, the appellant argues the trial court erred in denying him the relief he sought by the application for writ of habeas corpus, to prohibit the State from subjecting him to yet another trial because it violates his fifth amendment right not to be placed in jeopardy more than once.

■ In a jury trial, jeopardy attaches when the jury is impaneled and sworn to try the case. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *Ex parte Preston*, 833 S.W.2d 515, 517 (Tex. Crim.App.1992). If the dismissal, waiver, or abandonment occurs after jeopardy attaches, the State is barred from later litigating the same allegations. *Id.; Black v. State*, 845 S.W.2d 368, 369 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Once jeopardy attaches, the defendant has a valued right to be tried by the first trier of fact. *Crist*, 437 U.S. at 36, 98 S.Ct. at 2161; *Torres v. State*, 614 S.W.2d 436, 441 (Tex.Crim.App.1981). After jeopardy attaches, any charge that is dismissed, waived, or abandoned, or on which the jury returns an acquittal may not be retried. *Preston*, 833 S.W.2d at 517.

■ There are exceptions to this rule. A mistrial granted at the defendant's request does not terminate the original jeopardy. *Demouchete v. State*, 734 S.W.2d 144, 145–46 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (the defendant did not have a valid double jeopardy argument because he asked for the mistrial); *see Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982) (a defendant's motion for mistrial constitutes a deliberate election on his part to forego his valued right to have his guilt or innocence determined before the first trier of fact). A mistrial declared after a trial judge has determined the jury cannot agree upon a verdict does not terminate the original jeopardy to which the defendant was subjected. *Richardson v. United States*, 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); *see also Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957).

■ A pretrial writ of habeas corpus is an appropriate remedy to review an individual's double jeopardy claim. *Ex parte Rathmell*, 717 S.W.2d 33, 34 (Tex.Crim.App.1986). In *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Supreme Court said the double jeopardy guarantee

would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken.... Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.

*Abney*, 431 U.S. at 662, 97 S.Ct. at 2041.

We are faced with a question that has yet to be addressed in Texas: can a defendant successfully raise a claim of double jeopardy after two mistrials resulting from hung juries? Because the appellant's claimed error is of a constitutional nature, we review how other jurisdictions have interpreted the fifth amendment within the context of this challenge.

### One deadlocked jury

No court has held that a mistrial after one deadlocked jury was sufficient to prevent

retrial. *See Richardson*, 468 U.S. at 326, 104 S.Ct. at 3086 (one mistrial after a deadlocked jury did not prevent retrial); *People v. Thompson*, 424 Mich. 118, 379 N.W.2d 49, 55 (1983) (denied relief after one mistrial but said "there may be cases in which repeated retrials after repeated jury deadlock might be so fundamentally unfair as to violate the due process guaranteed by ... the Fourteenth Amendment to the United States Constitution").

## Two deadlocked juries

Some courts have held that mistrials after two deadlocked juries were sufficient to prevent retrial. In *State v. Moriwake*, 65 Haw. 47, 647 P.2d 705, 708 (1982), the trial court dismissed an indictment for manslaughter after two mistrials were declared because of deadlocked juries. The Hawaii Supreme Court made two holdings: first, it held that double jeopardy did not bar retrial; then, it upheld the dismissal of the indictment under the trial court's implicit power to dismiss. *Id.*[4] Texas has no statute equivalent to Hawaii's that gives the trial court inherent power to dismiss.

In *State v. Abbati*, 99 N.J. 418, 493 A.2d 513, 515 (1985), the trial court dismissed an indictment for kidnapping, sexual assault, and other related offenses after two mistrials were declared because of deadlocked juries. The New Jersey Supreme Court held that a trial court may be justified in dismissing an indictment with prejudice after two deadlocked juries. *Id.*, 493 A.2d at 521.[5] The court held the dismissal was proper under the trial court's inherent power as part of its exercise of fundamental fairness, which is the repository of the rights of the accused. *Id.* at 517, 519. The court remanded the case to the trial court to apply the factors listed in the opinion.[6]

In *United States v. Ingram*, 412 F.Supp. 384, 385 (D.C.Dist.1976), the trial court dismissed an indictment for murder, sua sponte, after two mistrials were granted after deadlocked juries.[7] The Federal District Court of the District of Columbia upheld the trial court's order of dismissal. The court articulated the issue as: "once again the ever recurring problem is presented whether any discretion exists in a United States District Judge to terminate a useless prosecution." *Id.* at 385. The court noted it was simply a matter of fair play and held that to permit a third trial after 21 of 24 jurors had already refused to convict is to ignore the reasonable doubt standard. *Id.* at 385–86. The court did not articulate the issue as one of double jeopardy; instead, it analyzed the inability to reach a verdict as indicating a reasonable doubt in the minds of a substantial majority of the jury members. *Id.* at 386.

Other courts have held two mistrials after deadlocked juries do not prevent a third trial. For example, in *United States v. Gunter*, 546

---

4. The factors the *Moriwake* Court said the trial court should weigh are: (1) the severity of the offense; (2) the number of mistrials and the circumstances of the juries' deliberations, if known; (3) the character of the trials in terms of length, complexity, and similarity of evidence presented; (4) the likelihood of any substantial difference in another trial; (5) the trial court's evaluation of the relative strengths of each party's case; and (6) the professional conduct and diligence of the counsel for the parties, particularly the prosecuting attorney. *Moriwake*, 647 P.2d at 712–13.

5. In *Abbati*, as here, the defendant was tried twice to hung juries and made a motion to dismiss before the third trial. What distinguishes *Abbati* from the case before us is that the trial court granted the motion to dismiss the indictment. Here, the trial court denied the motion to dismiss. In *Abbati* the trial court asked the jury to continue its deliberations, which is the function of an *Allen* charge. *Abbati*, 493 A.2d at 515.

6. The factors the *Abbati* Court said the trial court must consider are the same factors identified by the *Moriwake* Court except the *Abbati* factors omit the first, the severity of the offense. *Abbati*, 493 A.2d at 521–22. The *Abbati* Court seemed to add two additional considerations to the list of factors found in *Moriwake:* (1) the prosecutor's decision to reprosecute, assessing the reasons for that decision; and (2) the impact of the retrial on the defendant, in terms of hardship and unfairness. *Abbati*, 493 A.2d at 522.

7. In *Ingram*, as here, the defendant was tried twice to hung juries. What distinguishes *Ingram* is that nothing in the opinion indicates the trial court gave an *Allen* charge, and the trial court dismissed the case sua sponte. *Ingram*, 412 F.Supp. at 385. Here, the trial court gave an *Allen* charge and it denied the motion to dismiss.

F.2d 861, 864 (10th Cir.1976), the defendants who raised the claim of double jeopardy were tried for theft three times.[8] The first two trials ended in mistrials after the juries were declared deadlocked, and the third trial ended in a conviction.[9] *Id.* On appeal from the conviction, some of the defendants argued the third trial violated the double jeopardy clause of the United States Constitution. *Id.* The court said there might be a breaking point, but a third trial after two deadlocked juries was not it. *Id.* at 866.

### Three deadlocked juries [10]

Some courts have held that three mistrials after deadlocked juries are sufficient to prevent retrial. In *State v. Witt,* 572 S.W.2d 913, 914 (Tenn.1978), the trial court dismissed indictments for murder after three mistrials were declared because of deadlocked juries.[11] The Tennessee Supreme Court upheld the order of dismissal. The court said the relief could not be accurately labeled double jeopardy. *Id.* at 917. The court said a trial judge has the inherent authority to terminate a prosecution where repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries, the proposed retrial will be with substantially the same evidence, and the probability of another hung jury is great. *Id.*[12]

Other courts have held three mistrials do not prevent another retrial. In *People v. Kirby,* 92 A.D.2d 848, 460 N.Y.S.2d 572, 573 (1983), the trial court dismissed an indictment for murder after three mistrials were declared because of deadlocked juries.[13] Although the New York Supreme Court, Appellate Division, reversed the case for yet another trial, the court said a trial court has the inherent authority to terminate a prosecution in the exercise of its judicial discretion following mistrials based on deadlocked juries. *See id.,* 460 N.Y.S.2d at 573–74.[14]

In *Ex parte Anderson,* 457 So.2d 435, 436 (Ala.Cr.App.1984), the trial court refused to dismiss an indictment for murder after three mistrials were declared because of deadlocked juries.[15] The Alabama Court of Crim-

**8.** Some of the defendants did not raise the claim of double jeopardy—the defendants who were convicted at the second trial and one of the defendants who was convicted at the third trial. *Gunter,* 546 F.2d at 864.

**9.** In *Gunter,* the defendants who raised the double jeopardy claims were tried two times to hung juries, as the defendant here. *Gunter,* 546 F.2d at 864. In *Gunter,* the trial court declared a mistrial without objection by the defendants, not, as in this case, at the appellant's behest. In *Gunter,* the opinion does not mention whether the trial court gave an *Allen* charge, as it did here.

**10.** We include discussions of cases having more mistrials than the case before us only to demonstrate the wide variety of factors considered in other jurisdictions in determining when a given defendant's fifth amendment constitutional rights have been violated. We conclude from this review only that there is a constitutional limit, determined case by case, to how many times the State can retry a given defendant.

**11.** In *Witt,* the defendant was tried three times to hung juries. *Witt,* 572 S.W.2d at 914. Here, the appellant was only tried twice. In *Witt,* as in this case, the defendant made motions to dismiss following the deadlock. *Id.* What distinguishes *Witt* from the case before us is that in *Witt,*

nothing in the opinion indicates the trial court gave an *Allen* charge, and it granted the motion to dismiss. Here, the trial court gave an *Allen* charge, and it denied the motion to dismiss. The *Witt* Court noted the State and the defendants received three fair and impartial trials before competent and hardworking juries. *Id.* at 914–15.

**12.** In *Witt,* the Tennessee Supreme Court said the authority to dismiss after multiple trials could not be accurately labeled as relief under the double jeopardy clause. *Witt,* 572 S.W.2d at 917.

**13.** In *Kirby,* the defendant was tried three times to hung juries. Here, the appellant was only tried twice. In *Kirby,* nothing in the opinion indicates the trial court gave an *Allen* charge, and the trial court declared a mistrial "with the consent of the defense," not, as in this case, after an *Allen* charge and at the appellant's behest. *Kirby,* 460 N.Y.S.2d at 574.

**14.** In *Kirby,* the New York Supreme Court rejected the defendant's arguments that continued prosecution would subject them to double jeopardy and would constitute cruel and unusual punishment. *Kirby,* 460 N.Y.S.2d at 573.

**15.** In *Anderson,* the defendant was tried three times to hung juries, and in two of the cases the

inal Appeals denied the defendant's writ of mandamus seeking to prevent a fourth trial. *Id.* at 445. The court was particularly impressed with a statement of the trial judge that he knew the defendant was guilty. *Id.* at 438. The court rejected the double jeopardy and due process arguments. *Id.* at 440, 443.

### Four deadlocked juries

The one case we found with four mistrials after deadlocked juries held the defendants could not be tried a fifth time. In *Preston v. Blackledge*, 332 F.Supp. 681, 682 (E.D.N.C. 1971), the defendants were convicted of armed robbery in state court in the fifth trial after four mistrials were declared because the juries could not reach a verdict.[16] After the defendants were convicted, they appealed, and the judgments were affirmed. The defendants then filed writs of habeas corpus in federal court. *Id.* at 682. The Federal District Court for the Eastern District of North Carolina held the defendants' rights under the double jeopardy clause were violated by five trials. *Id.* at 685. The court ordered the defendants released and prohibited the State from trying them again. *Id.* at 688.

This is not an exhaustive analysis of all the courts that have addressed the issue of double jeopardy and multiple mistrials granted after deadlocked juries.[17] It is, however, representative.

Most of the cases surveyed here reject double jeopardy as a ground to prohibit retrial after multiple juries have been deadlocked. Only the Federal District Court for the Eastern District of North Carolina held that double jeopardy prohibits multiple retrials after deadlocked juries. *Preston,* 332 F.Supp. at 688. All the other opinions, however, admit there is some limit to the number of times the State can try a defendant to a deadlocked jury. The only disagreements are: (1) the authority the courts use to protect the defendant from endless retrials (double jeopardy, inherent power, fundamental fairness, or due process); and (2) the number of retrials to which a defendant may be subjected before the protection is invoked. Most of the cases that prohibit retrial after juries have deadlocked hold that the trial court has some inherent power to dismiss.

■ In Texas, the trial courts have no general authority, written or unwritten, inherent or implied, to dismiss a case without the prosecutor's consent. *State v. Johnson,* 821 S.W.2d 609, 613 (Tex.Crim.App.1991). Unless there is specific constitutional or statutory authority, a trial court cannot dismiss a prosecution except on the motion of the prosecuting attorney. *Id.* No statute or constitutional provision authorizes the trial court to dismiss after two deadlocked juries.

court gave an *Allen* charge. *Anderson,* 457 So.2d at 437. Here, the appellant was tried twice, and in both cases, the court gave the jury an *Allen* charge. In *Anderson,* as in this case, the defendant made motions to dismiss the indictment following the deadlock. *Id.* at 436.

**16.** In *Preston v. Blackledge,* the defendant brought a post conviction writ of habeas corpus to challenge the trial court's refusal to dismiss the indictment. *Preston,* 332 F.Supp. at 682. Here, the appellant brought a pretrial writ of habeas corpus. In *Preston,* the opinion does not mention if the trial court gave an *Allen* charge; the trial court in this case gave *Allen* charges to both deadlocked juries.

**17.** For a current and exhaustive list of cases involving mistrials following deadlocked juries, see Annotation, *Propriety of Court's Dismissing Indictment or Prosecution Because of Failure of Jury to Agree After Successive Trials,* 4 A.L.R.4th 1274 (1981 & Supp.1992). From that list, the conclusion can be drawn that no court has held one deadlocked jury prevents a retrial, and no court of record has permitted a retrial after four deadlocked juries. When the trial court has granted mistrials after deadlocked juries, it is the third and fourth trial that invokes the question whether the defendant ought to be put to yet another trial. Thus, the appellant's third trial in this case falls squarely in the questionable area.

| | No. of hung juries resulting in mistrials | Enough mistrials to dismiss indictment? | Grounds to dismiss indictment after hung juries |
|---|---|---|---|
| *Richardson* 1984 | 1 | no | |
| *Thompson* 1983 | 1 | no | |
| *Moriwake* 1982 | 2 | yes | implied judicial power |
| *Ingram* 1976 | 2 | yes | fair play |
| *Abbati* 1985 | 2 | yes | inherent judicial power based on fundamental fairness and due process |
| *Gunter* 1976 | 2 | no | |
| *Anderson* 1984 | 3 | no | |
| *Kirby* 1983 | 3 | no | inherent judicial power |
| *Witt* 1978 | 3 | yes | inherent judicial power, fair play, and substantial justice |
| *Preston v. Blackledge* 1971 | 4 | yes | federal double jeopardy |

### *Allen* charge

In only two of the cases reviewed did the trial court instruct the deadlocked juries to continue their deliberations before granting a mistrial. *See Anderson,* 457 So.2d at 437 (no dismissal after three deadlocked juries; the trial court gave an *Allen* charge in two of the three cases); *Abbati,* 493 A.2d at 515 (dismissal after two deadlocked juries; in one of the trials, the court asked the jury to continue its deliberations). In the appellant's case, the trial court gave an *Allen* charge to both of the deadlocked juries.

We do not have a copy of the *Allen* charges submitted in this case to the two juries when they could not reach a verdict. The trial court noted on its docket sheet that it gave the jury an *Allen* charge, and in oral argument, both parties agreed it was given. Without copies of the *Allen* charges, we are not in the position to gauge how much pressure they put on the two juries to reach a

18. There are numerous *Allen* charges with language that varies between persuasive to coercive. *See, e.g., Griffith v. State,* 686 S.W.2d 331, 332 (Tex.App.—Houston [1st Dist.] 1985, no pet.) (instruction suggested the jurors might violate their

verdict.[18] Thus, we cannot, as the appellant asks us to do, consider their effect on the juries.

### Summary

We have as part of the record in this case the evidence received at the habeas corpus hearing. We assume on this record that the trial court evaluated the evidence and concluded the appellant's double jeopardy rights had not, at that juncture, been violated. Considering the record before us, we hold the double jeopardy clause will not be violated by the third retrial of the appellant.

█ From this discussion we are not to be understood as adopting any specific or rigid formula of considerations or standards for determining when an appellant's constitutional rights would be violated by multiple retrials. We doubt a specific formulation is possible and believe that a constitutional error could be proved only within the context of the unique facts of the case in question. It is

oath if they did not reach a unanimous verdict); and *Dodd v. State,* 753 S.W.2d 519, 520 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (instruction was not coercive).

sufficient to say the cases we have reviewed establish that retrials following multiple deadlocked juries can, in some factual contexts violate an appellant's constitutional rights. The character of the facts of each case determine when the constitution stands as a barrier to the retrial of a given defendant. Further, the factors in the cases we discuss are not exhaustive of those the trial judge might consider. Our noting of the use of the *Allen* charge in this case is but one example of a factor unique in the case before us. The decision in Texas is left to the sound discretion of the trial judge based on the factors brought to his attention in the record before him.

We affirm the trial court's denial of habeas corpus.