**Aristotle Degaulle ELLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–00178–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 13, 2003.

Henry L. Burkholder III, Houston, for Appellant.

Donald W. Rogers, Jr., Asst. Dist. Atty., Houston, for Appellee.

Panel consists of Justices TAFT, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Aristotle Degaulle Ellis, guilty of aggravated robbery,[1] found an enhancement allegation true, and

---

1. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 1994).

assessed punishment at 30 years' confinement and a fine of $5,000. We affirm.

## Facts

On March 22, 2001, Tiffani Slaughter was driving her car on Interstate 59. The car made a noise and started to decelerate. Slaughter pulled off Interstate 59 onto the shoulder. Slaughter walked to a pay telephone, called her aunt for help, and returned to her car to wait for her aunt. Appellant pulled his car up behind Slaughter's car. Appellant got out of his car and asked Slaughter if she needed help. Slaughter told appellant that her father was coming and she did not need help. Slaughter returned to her car and got into the passenger side; and appellant got back into his car.

Appellant then got out of his car for a second time, and so did Slaughter. Appellant told Slaughter that he had run out of gas and asked for some money. Slaughter told him no, but said that he could wait until her father got there and maybe he could give appellant some money. Appellant then got back into his car and so did Slaughter.

Appellant got out of his car a third time. Slaughter also got out of her car and met him at the back of her car. Appellant had a gun and demanded Slaughter get back into her car and give him her jewelry. Appellant pushed Slaughter into her car and demanded that Slaughter "get down in the car." Appellant then drove off in his car. Slaughter wrote down appellant's license plate number. She never got her stolen property back.

Three days later, Officer Stephen Casko of the Houston Police Department stopped appellant for not dimming his headlights and for not signaling when turning. Casko ran the license plate number and found out that the car had been involved in a robbery. Casko was unable to verify the registration on appellant's car. He arrest-ed appellant for driving without a driver's license or insurance.

## Issues

In six points of error, appellant argues that his federal constitutional right against double jeopardy was violated; that his constitutional right to effective assistance of counsel was violated; that the trial court committed error in admitting hearsay testimony; that his federal constitutional right to confrontation and cross-examination was violated; and that the evidence was legally and factually insufficient to sustain his conviction.

## Discussion

### Double Jeopardy

■ In his first point of error, appellant argues that the trial court violated his federal constitutional right against double jeopardy by declaring a mistrial during the punishment phase of the first trial. Appellant asserts that the trial court abused its discretion by discharging the jury without making further inquiries into whether the jury could reach an agreement on punishment.

■ In a jury trial, jeopardy attaches when the jury is impaneled and sworn to try the case. *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978); *Ex parte Preston,* 833 S.W.2d 515, 517 (Tex.Crim.App.1992). Once jeopardy attaches, the defendant has a valued right to be tried by the first trier of fact. *Crist,* 437 U.S. at 36, 98 S.Ct. at 2161; *Torres v. State,* 614 S.W.2d 436, 441 (Tex.Crim.App. 1981). Double jeopardy protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *United States v. Dixon,* 509 U.S. 688, 695–96, 113 S.Ct. 2849, 2855–56, 125

L.Ed.2d 556 (1993); *Ex parte Herron,* 790 S.W.2d 623, 624 (Tex.Crim.App.1990) (op. on reh'g).

■■■ A mistrial declared after a trial judge has determined that the jury cannot agree upon a verdict does not terminate the original jeopardy to which the defendant was subjected and, therefore, does not result in double jeopardy. *Richardson v. United States,* 468 U.S. 317, 326, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984); *Sullivan v. State,* 874 S.W.2d 699, 701 (Tex.App.-Houston [1st Dist.] 1994, no pet.); TEX.CODE CRIM. PROC. art. 37.07(3) (Vernon 1981) ("In the event the jury shall fail to agree, a mistrial shall be declared, the jury be discharged, and no jeopardy shall attach."). In cases where the matter of punishment is referred to the jury, the verdict is not complete until the jury has rendered a verdict on guilt or innocence and the amount of punishment, if the jury has found the defendant guilty. TEX.CODE CRIM. PROC. art. 37.07(3). The length of time the jury may be held for deliberation rests in the discretion of the trial judge. *Bynum v. State,* 874 S.W.2d 903, 906–07 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd). Whether the court abused its discretion is determined by the amount of time the jury deliberates in light of the nature of the case and the evidence. *Id.* at 907. Whether it is improbable the jury would render a verdict may also be evidenced by how long the jury was deadlocked and whether the margin of disagreement had changed during the course of deliberations. *Id.*

■■■ In this case, the jury in the first trial heard testimony regarding punishment on January 9, 2002, beginning at 12:40 p.m. The jury began deliberating at 3:45 p.m. Several requests of the jury were sent to the court stating that they could not come to an agreement, one at 5:05 p.m. and one at 5:15 p.m. At that time, the court recessed until the next day. The following day the court reconvened and deliberations began at 8:50 a.m. Two more jury notes came from the jury foreman stating that the jurors could not come to a verdict. The trial judge gave the jury an *Allen* charge after the second note.[2] The trial judge commented on the record that the only sounds coming from the jury room were "yelling sounds." The trial judge determined that, after deliberating for a total of 8.5 hours (excluding breaks), the jury was deadlocked· and unable to reach a verdict on punishment. The trial judge declared a mistrial.

We hold that the trial judge did not abuse her discretion in declaring a mistrial after 8.5 hours of jury deliberations because the jury was given an *Allen* charge, there were yelling sounds coming from the jury room, and there had been several notes from the jury foreman expressing the jurors' inability to agree on a verdict. Because the mistrial was properly declared before the conclusion of the punishment phase of the trial, there was no violation of appellant's right against double jeopardy.

We overrule appellant's first point of error.

*Motion to Withdraw as Attorney of Record*

■■■ In his second point of error, appellant argues that the trial court violated his right to effective assistance of counsel by denying his trial counsel's motion to with-

---

2. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge attempts to break a deadlocked jury by instructing that the result of a hung jury is a mistrial and that jurors at a retrial would be faced with essentially the same decision, and by encouraging the jurors to try to resolve their differences without coercing one another. *See Simpson v. State,* 668 S.W.2d 915, 919 (Tex.App.-Houston [1st Dist.] 1984, no pet.).

draw as attorney of record. Appellant asserts that no meaningful attorney-client relationship existed.

The trial court has discretion to determine whether counsel should be allowed to withdraw from a case. *King v. State*, 29 S.W.3d 556, 566 (Tex.Crim.App. 2000). The right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice. *Id.* Personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. *Id.* A trial court has no duty to search for counsel agreeable to the defendant. *Id.*

The record reflects that the motion to withdraw was made orally on January 11, 2002, and then was made on the record and in writing on January 15, 2002, the first day of appellant's second trial. Appellant's trial counsel based his motion to withdraw on appellant's rejection of a plea bargain against the advice of counsel; appellant's decision to testify against the advice of counsel; appellant's repeated attacks during trial against counsel as being ineffective; appellant's accusations that, as a court-appointed attorney, counsel refused to call appellant's witnesses; appellant's assertion that he would raise ineffective assistance of counsel in a post-conviction writ; appellant's father's threat to "see to it that defense counsel never practices law again"; and appellant's disagreement with counsel on trial strategy. The trial judge determined that "the difficulties" that appellant's trial counsel was having would be the same for "any other lawyer who would be representing [appellant]." Given these circumstances, appellant has not shown that the trial court abused its discretion in denying the motion to withdraw.

We overrule appellant's second point of error.

### Hearsay

In his third point of error, appellant argues that the trial court committed reversible error in overruling his objection to Casko's testimony that appellant's car had been involved in a robbery. Appellant asserts that Casko's testimony was hearsay. Casko testified that he ran appellant's license plate on the computer in his car and received a response that appellant's car "had been possibly involved in a robbery three days earlier."

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse of discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). The appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* In addition, the appellate court must review the trial court's ruling in light of the evidence before the trial court at the time the ruling was made. *Id.*

Hearsay is a statement offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). Here, the testimony was not offered to prove the truth of the matter asserted; it was offered to show probable cause for the detention when appellant was stopped for traffic violations. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex.Crim.App.1995); *Black v. State*, 503 S.W.2d 554, 557 (Tex. Crim.App.1974); *Kimball v. State*, 24 S.W.3d 555, 564–65 (Tex.App.-Waco 2000, no pet.). The testimony was not hearsay, and therefore, the trial court did not abuse its discretion in overruling appellant's objection to Casko's testimony.

We overrule appellant's third point of error.

### Evidence Showing Bias & Prejudice

In his fourth point of error, appellant argues that the trial court committed re-

versible error by prohibiting appellant's introduction of evidence tending to show bias and prejudice on the part of the police officers involved. Appellant asserts that, by prohibiting him from introducing evidence tending to show the bias and prejudice of the police officers, the trial court violated his federal constitutional right to confrontation and cross-examination.

▆▆▆ The Sixth Amendment provides in part that "in all criminal prosecutions, the accused shall enjoy the right to be confronted with witnesses against him." U.S. CONST. amend. VI. The Supreme Court has recognized that a major reason underlying the right to confront witnesses is to give a defendant charged with a crime an opportunity to cross-examine the witnesses against him. *Pointer v. Texas*, 380 U.S. 400, 406–07, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). In addition, the Supreme Court has recognized that a defendant's denial of confrontation calls into question the ultimate "integrity of the fact-finding process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). Appellant does not argue that he was not given the opportunity to cross-examine and confront his accusers. To the contrary, appellant did cross-examine Slaughter and the police officers. Appellant has no constitutional guarantee to cross-examine and confront his own witness, since that witness is not "against him."

▆▆▆ Appellant also argues that his father's testimony would have been relevant in showing bias and prejudice. Appellant proffered the testimony of his father, Reverend Willie H. Ellis, outside the presence of the jury, to show that Reverend Ellis and his son were targets for embarrassment; that the Houston Police Department had Ku Klux Klan members at its highest levels; that appellant was a victim of "rogue" police officers; and that, upon reviewing the record, Reverend Ellis had concluded that appellant was the victim of a conspiracy. Reverend Ellis stated that he had no specific information alleging that Slaughter had been coerced into giving "any frivolous information" leading to appellant's arrest; he had no personal knowledge of where appellant was during the time the aggravated robbery took place; and he did not have any personal knowledge of whether the officers involved had any bias towards appellant. The trial court determined that Reverend Ellis's testimony would be hearsay and would not be relevant to the whereabouts of appellant. We follow the same standard of review regarding the admissibility of evidence as set out in point of error three. *Weatherred*, 15 S.W.3d at 542.

We hold that the trial court did not abuse its discretion in prohibiting Reverend Ellis from testifying before the jury because the proffered testimony was not relevant to or helpful to the determination of a fact in issue. *See* TEX.R. EVID. 401–02, 701. We overrule appellant's fourth point of error.

*Legal & Factual Sufficiency*

▆▆▆ In his fifth and sixth points of error, appellant argues that the evidence was legally and factually insufficient to support his conviction because Slaughter's testimony was not credible.

▆▆▆ In reviewing legal sufficiency, we view the evidence in a light most favorable to the verdict and ask whether a rational trier-of-fact could find the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App.2000); *Valencia v. State*, 51 S.W.3d 418, 423 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). The fact finder may reasonably infer facts from the evidence before it, credit the witnesses if it cares to, disbelieve any or all of the testimony proffered, and weigh the evidence in

the manner it chooses. *Bruno v. State,* 922 S.W.2d 292, 293 (Tex.App.-Amarillo 1996, no pet.).

■■■■ In reviewing factual sufficiency, we examine all the evidence neutrally and ask whether proof of guilt is so obviously weak as to undermine confidence in the jury's determination or so greatly outweighed by contrary proof as to indicate that a manifest injustice has occurred. *Zuliani v. State,* 97 S.W.3d 589, 593 (Tex. Crim.App.2003); *King,* 29 S.W.3d at 563; *Valencia,* 51 S.W.3d at 423. While conducting our analysis, if there is probative evidence supporting the verdict, we must avoid substituting our judgment for that of the trier-of-fact, even when we disagree with the determination. *King,* 29 S.W.3d at 563. The trier-of-fact is the sole judge of the weight and credibility of the witness testimony. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Pen.Code Ann. § 29.02(a)(2) (Vernon 1994); *Harper v. State,* 930 S.W.2d 625, 630 (Tex.App.-Houston [1st Dist.] 1996, no pet.). To sustain a conviction for aggravated robbery, it must be shown that appellant used or exhibited a deadly weapon in the course of committing or attempting a theft. Tex. Pen.Code Ann. § 29.03(a)(2) (Vernon 1994); *McCain v. State,* 22 S.W.3d 497, 501–02 (Tex.Crim.App.2000).

Here the State presented Slaughter's testimony, and appellant testified on his own behalf. Slaughter testified that appellant approached her three times; that she was able to see him clearly during each time; that appellant pointed a gun at her and demanded her jewelry; that appellant pushed her into her car; that during the encounter she was afraid; and that she wrote down his license plate number. Appellant continually denied any involvement in the matter. The jury decided, in this case, to believe Slaughter and to disbelieve appellant. We find that the evidence was legally sufficient for a rational trier-of-fact to find the essential elements of the crime beyond a reasonable doubt. Furthermore, because the jury, as trier-of-fact, is the sole judge of the weight and credibility of the witness testimony, we find that the evidence was factually sufficient to support the verdict.

We overrule appellant's fifth and sixth points of error.

### Conclusion

We affirm the judgment of the trial court.