Affirmed and Memorandum Opinion filed June 3, 2004









Affirmed and Memorandum Opinion filed June 3, 2004.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01022-CR

NO. 14-02-01023-CR

____________

 

TIMOTHY SCOTT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 405th
District Court

Galveston County, Texas

Trial Court Cause Nos. 01CR2001
& 01CR2002

 



 

M E M O R A N D U M   O P I N I O N








The jury convicted appellant of two counts
of indecency with a child, and the trial court assessed punishment at 40 years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In six points of error, appellant contends
(1) the trial court erred in sustaining a challenge for cause to a juror, (2)
the trial court erred in admitting hearsay testimony by an alleged outcry
witness, (3) the trial court erred in denying appellant=s motion for
mistrial after improper impeachment of a witness, (4) the trial court erred in
admitting opinion testimony by a non-expert witness, (5) the trial court erred
in denying appellant=s motion for a mistrial after the jury
indicated it was deadlocked, and (6) the evidence at trial is insufficient to
sustain the conviction.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The complainants, K.B. and B.B., are
sisters and were young children when their mother was killed in a car
accident.  K.B. went to live with Betty
Dalco and B.B. went to live with Shentelle Bobino.  At the time of the charged offenses,
appellant was living with and dating Bobino.

In July of 2001, K.B. spent a week at
Bobino=s house in League
City.  On one of those nights, K.B. slept
in a T-shirt and underwear.  According to
the testimony, appellant went into the room where K.B. was sleeping, twice touched
K.B.=s genitals through
her panties with his hand, and left when she woke.  K.B. was eleven years old at the time.

Also according to the testimony, around
the same date appellant spread B.B.=s legs and touched
her genitals with his hand while masturbating. 
B.B. was six years old at the time.

K.B. returned home to Beaumont after the
trip, and B.B. accompanied her to spend a week there.  The morning after arriving in Beaumont, both
K.B. and B.B. told Dalco about appellant touching them.  Dalco had her sister contact Child Protective
Services.  

Appellant was subsequently arrested and
charged with two counts of indecency with a child by contact and one count of
indecency with a child by exposure. 
Appellant was convicted on both counts of indecency with a child by
contact and acquitted on the count of indecency with a child by exposure.

ANALYSIS

I.        Challenge
for Cause to a Juror.








In his first point of error, appellant
contends the trial court erred in sustaining a challenge for cause to a
juror.  The State challenged the juror
based on the Aone witness rule,@ which appellant
claims was no more than a pretext because the State clearly intended to call
more than one witness.

The grant of a challenge for cause will
not be overturned on appeal absent an abuse of the trial court=s discretion, and
we give great deference to the trial court. 
Banda v. State, 890 S.W.2d 42, 53B54 (Tex. Crim.
App. 1994).  A trial court should
liberally grant challenges for cause.  Jones
v. State, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998).  Because a defendant=s rights go to
those who serve on a jury, not those who are excused, the erroneous excusing of
a juror will call for reversal only if the record shows the defendant was
deprived of a lawfully constituted jury.[1]  Id. at 393B94; see also
Erazo v. State, 93 S.W.3d 533, 535 (Tex. App.CHouston [14th
Dist.] 2002, pet. granted).

Even assuming the trial court abused its
discretion in granting the challenge for cause, appellant has not met his
burden of demonstrating that he was deprived of a lawfully constituted
jury.  Appellant has not met his burden
because he failed to present any evidence that the jurors who convicted him
were not qualified to do so.  See Jones,
982 S.W.2d at 394.  We overrule appellant=s first point of
error.  

II.       Hearsay
Testimony by an Outcry Witness.

In his second point of error, appellant
contends the trial court erred in admitting hearsay testimony by an alleged
outcry witness, Betty Dalco.  Appellant
argues that the State failed to provide a written summary of Dalco=s testimony as
required by the Texas Code of Criminal Procedure, Article 38.072, section 2(b).








However, appellant never objected on this
ground at trial.  When discussing the
admissibility of the testimony, appellant=s counsel stated, AThe only question
I think outstanding is whether Ms. Dalco was the first person to whom the
statement concerning [B.B.]  was made . .
. .@  Appellant has not preserved his complaint for
appellate review.  See Tex. R. App. P. 33.1(a); compare
Gay v. State, 981 S.W.2d 864, 867 (Tex. App.CHouston [1st
Dist.] 1998, pet. ref=d) (AIn the hearing and
during the trial, the appellant=s counsel
continuously objected that the outcry witness=s testimony did
not comport with article 38.072, indicating that the summary did not provide
enough detail.@). 
We overrule appellant=s second point of
error.

III.      Impeachment
of the State=s Own Witness.

In his third point of error, appellant
contends the trial court erred in denying appellant=s motion for
mistrial after improper impeachment of Shentelle Bobino.  The impeachment testimony consisted of Bobino=s statement that
she was arrested for aiding and abetting appellant.[2]  Appellant alleges the State called Bobino as
a subterfuge to get otherwise inadmissible evidence before the jury.

However, appellant never objected on the
ground that Bobino was called as a subterfuge at trial.  A defendant must specifically object at trial
that the impeachment was merely a subterfuge by which to introduce inadmissible
evidence in order to preserve that argument for appeal.  Garcia v. State, 887 S.W.2d 862, 874
(Tex. Crim. App. 1994).  We overrule
appellant=s third point of error.

IV.      Opinion
Testimony by a Non-expert.








In his fourth point of error, appellant
contends the trial court erred in allowing opinion testimony by a non-expert
witness.  Although the witness was
admittedly qualified as an expert licensed physician=s assistant, appellant
argues that she was not qualified to rely on a statement that Bobino intended
to marry appellant in making her diagnosis regarding B.B.[3]

We review the decision of the trial court
to admit expert testimony for an abuse of discretion.  Sexton v. State, 93 S.W.3d 96, 99
(Tex. Crim. App. 2002).  To be admissible,
expert testimony must assist the trier of fact in understanding the evidence or
determining a fact in issue.  Tex. R. Evid. 702.  Expert testimony that constitutes a direct
opinion on the truthfulness of a child complainant=s allegations does
not assist the trier of fact.  Schutz
v. State, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  Experts, such as psychologists, are not more
qualified to determine the credibility of witnesses than the trier of
fact.  Yount v. State, 872 S.W.2d
706, 710 (Tex. Crim. App. 1993).

The witness was not entitled to testify as
to the truthfulness of B.B.=s allegations or
Bobino=s statement that
she intended to marry appellant; nor did she do so.  She did explain that Bobino=s statement was
part of the history provided to her and that A[e]very bit of
history provided to [her] was taken into account to make a diagnosis.@  Appellant contends that the witness lacked
expertise and scientific authority for considering Bobino=s statement in
making her diagnosis.








The witness later clarified that she did
not base her diagnosis on Bobino=s statement, but
rather on outcry testimony by B.B.[4]  It is conceivable that the witness could have
examined Bobino=s statement, along with all of the other
history provided, and determined that it was not relevant to her
diagnosis.  The trial court would thus
not have abused its discretion in accepting the witness=s explanation that
she considered but did not rely on Bobino=s statement.  We overrule appellant=s fourth point of
error.

V.      Jury
Deadlock.

In his fifth point of error, appellant
contends the trial court erred in denying his motion for a mistrial after the
jury twice indicated that it was deadlocked. 
After each indication of deadlock, the court instead responded, APlease continue
your deliberations and try to reach a verdict.@

A trial court may in its discretion
discharge a jury Awhere it has been kept together for such
time as to render it altogether improbable that it can agree.@  Tex.
Code Crim. Proc.  art. 36.31.  The length of time a jury may be held for
deliberations rests within the discretion of the trial court.  Montoya v. State, 810 S.W.2d 160, 166
(Tex. Crim. App. 1989).  Whether the
trial court abused its discretion is determined in light of the nature of the
case, the length of the trial, and the volume of evidence submitted to the
jury.  See Jackson v. State,
17 S.W.3d 664, 676B77 (Tex. Crim. App. 2000).  Ellis v. State, 99 S.W.3d 783, 787
(Tex. App.CHouston [1st Dist.] 2003, pet. ref=d).  There is no limit on the length of time a
jury may deliberate.  Guidry v. State,
9 S.W.3d 133, 155 (Tex. Crim. App. 1999).








In this case, appellant was charged with
three felonies committed against two child complainants.  The jury ultimately convicted him of two of
the felonies and acquitted him of the third. 
Seven witnesses testified, including the two child complainants and two
expert witnesses.  The testimony lasted
approximately six hours.  The record
indicates that the jury twice requested clarifications regarding evidence.  There is no indication of when these requests
were made, but they indicate that the jury was actively considering the
evidence at some point during deliberations. 
The jury deliberated for slightly less than four hours before the first
indication of deadlock, about eight hours before the second indication of deadlock,
and about ten hours before reaching a verdict. 
Considering the nature of the case, the length of the trial, and the
volume of evidence presented, the trial court did not abuse its discretion in
determing that a verdict was not altogether improbable.  We overrule appellant=s fifth point of
error.

VI.      Sufficiency
of the Evidence.

In his sixth point of error, appellant
contends the evidence is insufficient to sustain the conviction.  Appellant contends that the evidence did not
demonstrate that his hand came into contact with the complainants= genitals and that
Dalco=s testimony both
contradicted and  embellished the
complainants= testimony.

In evaluating a legal sufficiency
challenge, we view the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the elements of
the offense beyond a reasonable doubt.  Sells
v. State, 121 S.W.3d 748, 753B54 (Tex. Crim.
App. 2003); Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The issue on appeal is not whether we, as a
court, believe the State=s evidence or believe that appellant=s evidence
outweighs the State=s evidence.  Wicker v. State, 667 S.W.2d 137, 143
(Tex. Crim. App. 1984).  The verdict may
not be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991); see also Swearingen v.
State, 101 S.W.3d 89, 94 (Tex. Crim. App. 2003).

In evaluating a factual sufficiency
challenge, we look at all of the evidence without the prism of Ain the light most
favorable to the prosecution,@ and we will
reverse a conviction only if the evidence supporting guilt is so obviously weak
or so against the great weight and preponderance of contrary evidence as to
render the conviction clearly wrong and manifestly unjust.  Sells, 121 S.W.3d at 754.













K.B. testified that appellant touched her Aprivate part@ with his hand,[5]
and B.B. testified that appellant touched her Aprivate@ with his hand.[6]  Although they used the terms Aprivate part@ and Aprivate@ instead of a more
technical description, child victims are not expected to testify with the same
clarity expected of mature and capable adults. 
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App.
1990).  Additionally, K.B. testified that
she was touched on top of her panties. 
The record is silent as to where K.B. pointed when she was asked where
she was touched, but the record indicates that B.B. pointed between her legs when
asked the same question.  

Although K.B. testified that she was
touched on top of her panties and B.B. was uncertain whether she was touched on
top of her clothes or underneath her clothes, Asexual contact@ as defined by the
Texas Penal Code Ainclud[es] touching through clothing.@  Tex.
Penal Code ' 21.11(c)(1).  This evidence was sufficient for a rational
trier of fact to have found that appellant touched the complainants= genitals with his
hand. 

Appellant also contends that the testimony
of the complainants was both contradicted and embellished by Dalco=s testimony.  Appellant does not cite any specific
contradictory testimony by Dalco, and our review of the record does not reveal
any such testimony that so greatly outweighs the testimony by the complainants
as to render the conviction clearly wrong and manifestly unjust.  Appellant also does not cite to any specific
embellishing testimony by Dalco, nor does appellant explain how the
embellishment of the complainants= testimony would render
that testimony legally or factually insufficient.  We overrule appellant=s sixth point of
error.

We affirm the judgment of the trial court.

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Memorandum Opinion filed June 3, 2004.

Panel
consists of Justices Fowler, Edelman, and Smith.[7]

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  The analysis
differs when a juror is excused based on race, sex, or views on the death
penalty.  See Feldman v. State,
71 S.W.3d 738, 749 (Tex. Crim. App. 2002) (A[W]hether
a venireperson was properly challenged based upon her views of the death
penalty is a matter of constitutional dimension and requires a different
analysis.@); Gibson v. State, 117 S.W.3d 580 (Tex. App.CCorpus Christi 2003, no pet.) (ABatson error
is not subject to a harm analysis.@).  However, none of those situations is present
in this case.





[2]  On direct
examination, Bobino testified as follows:

Q.         Do you recall the
police coming to your house?

A.         Yes.

Q.         Tell the jury what
happened on that occasion?

A.         Police came up to my
house.  I can=t remember the exact date, they arrested myself and
[appellant].

Q.         What did they arrest
you for?

A.         For aiding and
abetting.





[3]  We note that
the first page of the expert=s report, which was admitted without objection,
contains the notation, ADX: (1) child sexual abuse.@  On
cross-examination, the expert explained that ADX@ was an abbreviation for Adiagnosis.@  It is therefore possible that appellant
waived his right to complain about the admissibility of the expert=s diagnosis.





[4]  The witness
testified as follows:

Q:         So, how could you use a
science or field that is not within your field of expertise in making a
diagnosis?

A:         That bit of
information, she did indicate to me that she still intends to marry him is not
what made my diagnosis.  My diagnosis was
made on history that the child had outcried.  Fondling her genitals on more than one
occasion and [Bobino] had offered some history of sexual acting out.  Those are the historical information that was
used to make a diagnosis.





[5]  K.B. testified
as follows:

Q.         What did [appellant]
do?

A.         He touched me where I
wasn=t supposed to be touched.

Q.         What part of your body
was that?

A.         Private part.

Q.         Can you point to that
area of the body and show the jury what you=re
talking about?

A.         Right here.

. . .

Q.         What did he touch you
with?

A.         His hand.

. . .

Q.         When he touched you in
the bedroom on your private parts did he touch you on top of you [sic] panties
or underneath your panties?

A.         On top.





[6]           B.B. testified as follows:

Q.         [B.B.], where did
[appellant] touch you?

A.         On my private.

. . .

Q.         And what part of your
body is your private, can you point to it for me just to show where you=re talking about?

A.         Right here.

Q.         Are you pointing down
sort of between your legs, that area?

A.         Yes.

. . .

Q.         And what did [appellant]
touch you with when he touched you on your private part?

A.         I think his hand.

. . .

Q.         [B.B.], do you know if
he touched you on top of your clothes or did he touch you underneath your
clothes?

A.         No.  I don=t know.  No.

Q.         You don=t remember?

A.         No.





[7]  Senior Justice
Jackson B. Smith, Jr. sitting by assignment.