Opinion issued October 6, 2005
     














In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00733-CR




HENRY LEE CONLEY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 988554




MEMORANDUM OPINION

          A jury convicted appellant, Henry Lee Conley, of felony assault upon a family
member. See Tex. Pen. Code Ann. § 22.01(a)(1), (b)(2) (Vernon 2003). After
having found true two enhancement paragraphs alleging prior felony convictions for
delivery and possession of a controlled substance, the jury assessed punishment at 25
years and six months in prison. We determine (1) whether the trial court erred in
denying appellant’s cross-examination of a witness and (2) whether the evidence was
legally and factually sufficient to convict appellant of the offense. We affirm. 
Facts
          Christina Lott and appellant were married, but separated. On December 24,
2003, appellant and Lott argued about their relationship and respective infidelities. 
During the argument, appellant caused Lott pain by striking her on the side of the
head with a cordless phone and punching her in the face with his fist so that her nose
bled profusely. After appellant had apologized to Lott, he begged her not to call the
police. Lott complied. 
          Later that night, appellant called Lott from his sister’s house, requesting that
Lott pick him up. Lott drove to appellant’s sister’s house, where she and appellant
argued again. Lott and appellant’s sister, Tiffany Conley, also argued, and Lott left
without appellant. After another call from appellant, Lott agreed to pick him up at
a gas station and allowed him to spend the night at her house.
          On the morning of December 25, 2003, appellant and Lott began arguing again
after the children had begun opening presents. Appellant became angry and cursed
at Lott when he realized that she had not purchased a present for his biological
daughter. Lott cursed back and took some of appellant’s belongings outside to the
trash, which incited appellant to follow her, to punch her in the arm, and to choke her
to the ground. Lott ran into the house, dialed 9-1-1, and then hung up. Lott told
appellant to leave, but he refused, saying that the police would get him if he left. He
threatened to tear up Lott’s car if she did not take him to his sister’s house, which Lott
refused to do, although she did drive him to his cousin’s house. After having been
choked again by appellant in front of his cousin’s house, Lott returned to her own
house to find several deputy constables waiting, including Deputy Charles Gore. The
constables photographed Lott’s visible facial injuries, took her written statement,
concluded their investigation, and left Lott’s house. The same afternoon, Deputy
Gore received a call from appellant. Appellant told Deputy Gore that he had not
assaulted Lott, but that another family member had done so. Appellant refused
Deputy Gore’s request for a written statement.
Cross-Examination
          In his first point of error, appellant contends that the trial court violated his
right to confrontation by limiting his right to cross-examine Lott regarding messages
that she had left on appellant’s mistress’s telephone answering machine. Appellant
claims that he was entitled to delve into the voice-mail messages to show that Lott
was familiar with intimate aspects of the relationship between appellant and his
mistress that had to have predated the alleged offense, thereby impeaching Lott’s
testimony that she became aware that appellant had been cheating on her only on the
day of the offense.
A.      The Law
          “The Sixth Amendment provides in part that ‘in all criminal prosecutions, the
accused shall enjoy the right to be confronted with witnesses against him.’” Ellis v.
State, 99 S.W.3d 783, 789 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (quoting
U.S. Const. amend. VI). The United States Supreme Court has recognized that a
primary interest secured by the Confrontation Clause is to give a criminal defendant
an opportunity to cross-examine the witnesses against him. Id. (citing Pointer v.
Texas, 380 U.S. 400, 406-07, 85 S. Ct. 1065, 1069 (1965)). A defendant’s 
“constitutional right of confrontation is violated when appropriate cross-examination
is limited.” Crenshaw v. State, 125 S.W.3d 651, 654 (Tex. App.—Houston [1st Dist.]
2003, pet. ref’d) (citing Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App.
1996)). 
          The right to cross-examination is subject to the trial court’s broad discretion
to set reasonable limits “to avoid, inter alia, harassment, prejudice, confusion of the
issues, endangering the witness, and the injection of cumulative or collateral
evidence.” Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). A trial
court must weigh each Confrontation Clause issue on a case-by-case basis, so that
both the defendant’s right to cross-examine and the risk factors associated with the
admission of the evidence are carefully taken into account. Hoyos v. State, 951
S.W.2d 503, 510 (Tex. App.—Houston [14th Dist.] 1997), aff’d, 982 S.W.2d 419
(Tex. Crim. App. 1998). 
          Generally, specific examples of misconduct are inadmissible for the purpose
of attacking a witness’s character for truthfulness. Crenshaw, 125 S.W.3d at 654
(citing Tex. R. Evid. 608(b)). However, specific examples of misconduct are
admissible to show a witness’s bias or motivations. Id. (citing Tex. R. Evid. 613(b)
and Dixon v. State, 2 S.W.3d 263, 271 (Tex. Crim. App. 1999)). “While great latitude
should be allowed in cross-examining witnesses to reveal possible bias, prejudice, or
self-interested motives to falsify testimony, appellant bears the burden of
demonstrating the relevance of the proffered evidence to the issue of bias or
prejudice.” Id. (citing Chambers v. State, 866 S.W.2d 9, 26-27 (Tex. Crim. App.
1993)). 
B.      Application to the Facts
          Appellant claims that the trial court sustained the State’s objection to his line
of questioning and that Lott never answered appellant’s question. Appellant also
claims that he made an offer of proof regarding the contents of the voice-mail
recording and the purpose of his cross-examination, after which the trial court ruled
the questioning improper.
 
          What the record actually reflects is not as clear as appellant claims. On cross-examination, defense counsel asked Lott if she had ever called and left her voice-mail
message for Dee, appellant’s mistress. The prosecutor objected on the basis of
relevance, and the trial court sustained the objection, telling defense counsel to be
more precise as to the time frame. The trial court then heard the matter outside the
presence of the jury. The State’s position was that phone calls made after the offense
were irrelevant. Defense counsel argued that he had a right to impeach Lott’s
credibility and that that was his purpose. 
          The trial court invited defense counsel to specify what matters he thought were
relevant. Defense counsel stated that Lott, on or about March 17, 2004 and even
before, had made several telephone calls, leaving voice-mail messages on appellant’s
mistress’s answering machine. Defense counsel opined that such statements were
consistent with Lott’s knowing who appellant’s mistress was long before the time that
she had claimed to have found out. Defense counsel also opined that this evidence
was illustrative of Lott’s vindictiveness because Lott had said in the messages that
she would see appellant go away for 25 years. 
          After further discussion, defense counsel offered to limit his cross-examination
to questions about only one call. When the trial court asked again about the relevance
of this call, defense counsel replied that it indicated that Lott was aware who the
mistress was long before she claimed to have known. Defense counsel said that it
would also be relevant to show that Lott’s intent from the beginning was to make sure
that appellant spent time in the penitentiary. The trial court then stated that
appellant’s theme that Lott was a scorned woman seeking to get appellant into trouble
had already been very capably demonstrated by the defense. The trial court ruled that
appellant could not play the voice-mail recordings and could not ask Lott if she had
ever cussed at appellant’s mistress just so that he could then impeach her with a
recording of that nature.
           Assuming without deciding that this last ruling could be construed as a refusal
to allow appellant to impeach Lott concerning the calls, the basis for the trial court’s
ruling was clearly that the timing of the voice-mail messages, made months after the
offense, did not show Lott’s familiarity with appellant’s mistress before the offense. 
As for any probative value of Lott’s wanting appellant to spend time in the
penitentiary, the trial court could have found that, due to the evidence’s being
cumulative of other efforts that defense counsel had already ably made, the unfair
prejudice of the inflammatory language would have substantially outweighed its
probative value. We see no abuse of discretion in the trial court’s ruling.
          Moreover, the record shows that appellant later recalled Lott to the witness
stand and was allowed to question her about her having left a voice-mail message for
appellant’s mistress stating that, if Lott could not have appellant, then nobody was
going to have him. When the State objected to relevance based on the time of the
voice-mail message in regard to the time of the offense, the trial court called a bench
conference. Lott, the trial court, and counsel for both parties all tried to listen to the
recordings, but found them virtually inaudible. The trial court asked defense counsel
for a proffer of what he wanted to ask Lott. The initial proffer was: (1) Lott left the
messages and (2) Lott said in the messages that appellant would get aggravated time
because of her testimony against him. 
          Appellant then offered Lott’s testimony outside the jury’s presence. In
response to defense counsel’s questions, Lott agreed that she had called appellant’s
mistress on or about March 17 and had left messages on the voice-mail system. Lott
testified that the taped messages, however, had come from appellant’s sister’s house
before the date of the alleged offense. Lott admitted using the word “aggravated” in
the first and third messages, but denied that she had ever said anything about being
in love with appellant. Lott admitted that she had said that appellant was always
going to come back to her and “eat her p - - - y” and that appellant’s mistress felt
threatened because appellant’s mistress was the one paying for appellant’s lawyers. 
After some discussion about the exact proffer that defense counsel had made, the trial
court ruled that defense counsel would be allowed to ask exactly what he had
proffered and nothing more. Defense counsel agreed to the trial court’s ruling. 
          When the jury returned, defense counsel got Lott to admit that she had been
mistaken earlier when she had testified that she had not left messages on the voice
recorder of appellant’s mistress. Lott admitted that she had left messages, but
claimed that her use of the term “aggravated” in those messages did not refer to
appellant’s getting aggravated time, but instead to the belief that he would be mad or
angry. Defense counsel stated that he had no further questions.
          We hold that the trial court did not abuse its discretion because it fully
accommodated appellant’s request to impeach Lott in exactly the manner that defense
counsel had proffered his questions. Under these circumstances, the record simply
does not support appellant’s contention that he was denied his constitutional right to
cross-examine Lott. 
          Accordingly, we overrule appellant’s first point of error.
Sufficiency of the Evidence
          In his second and third points of error, appellant claims that the evidence was
legally and factually insufficient to prove that he committed felony assault upon a
family member. Specifically, appellant complains that Lott was not a credible
witness and that his witness contradicted Lott’s testimony that appellant had assaulted
her.
          In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational fact finder could have found the
crime’s essential elements beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 
1, 7 (Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979)). In our factual-sufficiency review, we examine all of the
evidence neutrally and ask whether proof of guilt is so obviously weak as to
undermine confidence in the jury’s determination or so greatly outweighed by
contrary proof as to indicate that a manifest injustice has occurred. See Zuliani v.
State, 97 S.W.3d 589, 593-4 (Tex. Crim. App. 2003). We must consider the most
important evidence that appellant claims undermines the jury’s verdict. Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003). However, we do not intrude on the fact
finder’s role as the sole judge of the weight and credibility of witness testimony. 
Johnson, 23 S.W.3d at 7.
          To prove the felony offense of assault upon a family member, the State must
show that a person intentionally, knowingly, or recklessly caused bodily injury to
another family member and that the defendant had previously been convicted of
assault against a member of the defendant’s family or household. Tex. Pen. Code
Ann. § 22.01(a)(1), (b)(2). Appellant challenges the sufficiency of the evidence
showing that he intentionally, knowingly, or recklessly caused bodily injury to Lott.
          The evidence set out above, when viewed in the light most favorable to the
verdict, shows that appellant assaulted Lott several times on December 24 and 25,
2003. Viewing this evidence in the light most favorable to the jury’s verdict, we hold
that the evidence is legally sufficient to prove that appellant assaulted Lott, a family
member. 
          In his factual-sufficiency challenge, appellant contends that Lott’s testimony
was not credible and that her testimony that appellant had struck her and caused her
injuries was rebutted by testimony from his sister. Although appellant’s sister
testified that she was the one who had struck Lott and caused her injuries, the jury,
as the sole judge of the weight and credibility of the witness testimony, could
disbelieve any or all of the testimony proffered and weigh the evidence in the manner
that it chose. See Bruno v. State, 922 S.W.2d 292, 293 (Tex. App.—Amarillo 1996,
no pet.). We hold that the evidence is factually sufficient to support appellant’s
conviction. 
          We overrule appellant’s second and third points of error. 
Conclusion
          We affirm the judgment of the trial court.  
 

                                                             Tim Taft
                                                             Justice
Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).