Opinion issued October 20, 2005










     




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00715-CR




GILBERT ANTHONY MARTINEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 338th District Court
Harris County, Texas
Trial Court Cause No. 988055








 
O P I N I O N

          Appellant, Gilbert Anthony Martinez, was charged by indictment with
murdering the complainant by shooting her with a deadly weapon, namely a firearm. 
See Tex. Pen. Code Ann. § 19.02 (Vernon 2003). The jury found appellant guilty
as charged and assessed punishment at confinement for life.
          In five issues, appellant contends that the trial court abused its discretion in (1)
admitting DNA evidence from fingernail scrapings without a proper chain of custody,
(2) refusing to strike the testimony of two witnesses who spoke to one another outside
the courtroom, and (3) allowing hearsay into evidence over timely objections. 
          We affirm.
Background
          On the night of November 2, 2000, appellant’s girlfriend, the complainant
April Dykes, was found shot to death in Idylwood Park in Houston. Earlier that
evening, April had gone to visit a neighbor, Albert Castillo. April and Castillo went
to the corner store in Castillo’s car. Later, while they sat in the car and talked,
appellant drove by, turned around, then parked near Castillo’s car. Appellant drove
a black Cadillac with a white right-front panel. 
          Appellant got out and approached the passenger side of Castillo’s car. April
ducked down in her seat to hide. Appellant saw April and told her to get out of
Castillo’s car while cursing at her. April hesitated, telling Castillo that she did not
want to get out. Castillo told her to stay in the car, but April replied, “That’s my
boyfriend, I got to go.” April got into appellant’s Cadillac with appellant, Terrence
“TJ” Brundage, and Alex Caballero, and the group headed toward Idylwood Park. 
          Shortly thereafter, Darryl Hickey and Sabrina Sheppard heard three gunshots
from their respective homes near Idylwood Park. Hickey ran outside and saw three
men running out of the park and getting into a dark-colored, older-model, four-door
car with a light-colored front panel on the passenger side. Sheppard ran to the end
of her driveway and saw a dark-colored vehicle with a white right-front panel at the
park. She then saw three men run out of the park and get into the car. Hickey and
Sheppard ran to the park and found April gasping for breath. Moments later, April
died. Houston Police Sergeant Michael Peters arrived at the scene, “bagged” April’s
hands, and requested fingernail scrapings from the medical examiner. 
          The next day, Sergeant Peters received a report from Crime Stoppers that the
shooter had been identified as “Gilbert Martinez.” Sergeant Peters located appellant
and asked him to come in and give a statement. In his statement, appellant asserted
that he was not with April at the time of the incident and did not know the
circumstances surrounding her death.
          April’s autopsy revealed that she had been shot three times in the chest, once
at close range. Among the samples submitted for DNA analysis were scrapings from
under her fingernails. The analysis indicated that appellant could not be excluded as
a possible contributor to the material recovered from April’s fingernails. 
          In January 2001, appellant told his ex-girlfriend Monica Parra that April was
killed in his car during a drive-by shooting. When Parra continued to question him
as to why there were no bullet holes in his car, appellant admitted that he killed April. 
          In November 2001, appellant began dating Maya Blakely. Blakely asked
appellant multiple times about April’s death over the course of several months. 
Appellant first asserted that she was killed by a jealous boyfriend. Eventually,
appellant confessed that he shot April, and he took Blakely to Idlywood Park to show
her where it occurred. Blakely contacted police, and appellant was arrested.
Chain of Custody
          In his first issue, appellant contends that the “trial court abused its discretion
in admitting DNA testimony concerning fingernail scrapings, when the chain of
custody of those scrapings was not proven.”
A.     Standard of Review and Applicable Law
          The standard of review for a trial court’s ruling under a rule of evidence is
abuse of discretion. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000). A trial court abuses its discretion when it acts without guiding rules or
principles. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991). We
review the trial court’s ruling in light of what was before the trial court at the time the
ruling was made and uphold the trial court’s judgment if it lies within the zone of
reasonable disagreement. Weatherred, 15 S.W.3d at 542.
          As a condition precedent to the admission of evidence, the trial court must be
satisfied that the evidence offered is what the proponent claims. Tex. R. Evid.
901(a); Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998). This can be
accomplished by testimony from a witness with knowledge that an item is what it is
claimed to be. Tex. R. Evid. 901(b)(1). The authentication requirement for
admissibility is met once the State has shown the beginning and the end of the chain
of custody, particularly when the chain ends at a laboratory. Gallegos v. State, 776
S.W.2d 312, 315–16 (Tex. App.—Houston [1st Dist.] 1989, no pet.). Any gaps and
minor theoretical breaches go to the weight rather than the admissibility of the
evidence, absent a showing of tampering. Medellin v. State, 617 S.W.2d 229, 232
(Tex. Crim. App. 1981); Gallegos, 776 S.W.2d at 315–16.B. Analysis
          Appellant argues that the chain of custody was broken because there was no
testimony from the “doctor who supposedly collected [the fingernail scrapings]” or
from the person who transported the evidence from the medical examiner’s office to
the crime lab. Appellant further asserts that there was no evidence showing how the
fingernail scrapings were stored, tagged, or labeled or showing that the scrapings
were given a consistent identifying number.
          Contrary to appellant’s argument, testimony was offered to show that the chain
of custody was maintained. Sergeant Peters testified that he bagged April’s hands at
the crime scene and asked that fingernail scrapings be obtained by the Harris County
Medical Examiner during the autopsy process. 
          The record reflects that Dr. Harminder Narula of the Harris County Medical
Examiner’s Office performed the autopsy; however, Dr. Narula was unavailable to
testify at trial. Instead, Deputy Chief Medical Examiner Dr. Dwayne Wolf testified
regarding the autopsy evidence. Dr. Wolf testified that it is common for a medical
examiner to review autopsy reports prepared by colleagues and to testify about the
findings. Indeed, the Court of Criminal Appeals has stated that the testimony of
someone other than the doctor who performed the autopsy is sufficient for
admissibility purposes. Mays v. State, 726 S.W.2d 937, 951 & n.7 (Tex. Crim. App.
1986). 
          Dr. Wolf testified that April’s body was given a unique “medical legal number”
upon arrival and that the same medical legal number was used to identify materials
from the autopsy. Dr. Wolf stated that the autopsy records were made at or near the
time of the events recorded, were kept in the regular course of business of that office,
and were made by an employee with personal knowledge of the contents. Fingernail
scrapings were collected from both hands by Dr. Narula’s assistant, while under Dr.
Narula’s direct observation and supervision. A wooden stick was used to scrape the
fingernails and the samples were folded into a white piece of paper and sealed in an
envelope. 
          Sergeant Peters testified that he transported the fingernail scrapings from the
Medical Examiner’s Office to the Houston Police Department (“HPD”) Property
Room. The scrapings were received by Hawan Wilson, in Centralized Evidence
Receiving. Sergeant Peters also testified that he obtained a search warrant and
brought appellant down to the HPD Crime Lab where he watched Dr. Joseph Chu
obtain a blood sample from appellant. 
          Christy Kim, also of the HPD Crime Lab, testified that she received the
fingernail scrapings from the property room and that the scrapings were “in the paper
folds,” matching the description Dr. Wolf gave. Kim also testified that she received
appellant’s blood sample and made blood stain cards. Kim extracted the DNA and
sent out two samples. One was sent to Dr. Chu for analysis; a second sample was
sent to Identigene by Connie Dieringer.
          Senior Forensic DNA Analyst Robin Guidry testified that Identigene received
seven items of evidence from the Houston Police Department, including fingernail
scrapings from April and blood sample cards from appellant and Caballero. Guidry
testified that Identigene’s chain of custody report states that the samples were
delivered by Connie Dieringer, of the Houston Police Department, and received in
person by Jennifer McCue, a DNA analyst at Identigene. The sealed evidence was
given a unique identification number and placed in a secure frozen storage. Guidry
testified that she retrieved the items from the freezer and performed the DNA
analysis. She compared the scrapings with the blood stain cards and concluded that,
while Caballero could be excluded, appellant could not be excluded as a contributor
of the DNA material recovered from April’s fingernails.
          Although there was no direct testimony by Dr. Narula, who performed the
autopsy, or Hawan Wilson, who transported the evidence within HPD, the testimony
of Sergeant Peters, Dr. Wolf, and Kim established the chain of custody of the
fingernail scrapings from the scene, to the Medical Examiner’s Office, and then to the
HPD Crime Lab. See Mays, 726 S.W.2d at 951 & n.7. Further, the testimony of Kim
and Guidry established the chain of custody from the HPD Crime Lab to the
Identigene lab. Any gaps were minor and went to the weight of the evidence rather
than its admissibility. Foster v. State, 101 S.W.3d 490, 498 (Tex. App.—Houston
[1st Dist.] 2002, no pet.) (holding that “particularly if the chain of custody through
to the laboratory is shown,” gaps go to the weight, not admissibility of evidence). 
          Appellant does not assert that there is evidence of tampering or that the
fingernail scrapings were not collected or transported according to Houston Police
Department policies and procedures. See Lagrone v. State, 942 S.W.2d 602, 617
(Tex. Crim. App. 1997) (concluding that, without questions of tampering, most
questions concerning care of a substance will go to weight and not to admissibility). 
Absent such evidence, the chain of custody evidence was sufficient for the State to
meet its burden.
          We conclude that the trial court did not abuse its discretion in admitting the
DNA evidence obtained from the fingernail scrapings. The testimony elicited by the
State was sufficient for the trial court to have determined that the DNA evidence was
derived from the material recovered from April’s fingernails and was thus what it was
purported to be. Deciding what weight to give to the evidence was within the
province of the jury. We hold that the trial court did not abuse its discretion in
admitting the DNA testimony and evidence.
          Appellant’s first issue is overruled. 
“The Rule” 
          In his second issue, appellant contends that the trial court “erred by refusing
to strike the testimony of two State witnesses who violated the rule against discussing
testimony with each other” prior to testifying. The record reflects that Rule of
Evidence 614 was invoked at the beginning of trial and that the trial court
admonished all witnesses not to “discuss the case with anyone; not with each other
or anyone else” and asked all witnesses to leave the courtroom until called.
          Because of their claims that appellant confessed to killing April, Monica Parra
and Maya Blakely were key witnesses and were listed on the State’s witness list. 
During cross-examination, defense counsel asked Blakely if she had spoken with
Parra outside the courtroom while both waited to be called to the stand. Blakely
responded that she had. Defense counsel asked her if she and Parra had discussed any
facts relating to their testimony. Specifically, appellant complains of the following
testimony by Blakely:
          A.       . . . I didn’t tell her, you know, details. But she knew I was testifying
against Gilbert.
          Q.      I mean, did she talk—I don’t mean details, like the date he came over,
and how long he stayed. But, I mean, generally, did you talk about, you
know, yeah, he told me this. And, you know, he told me the same kind
of things, and that’s why I’m down here?
          A.      Yeah.
          Q.      You talked about—did y’all talk about—had she already testified when
you talked to her, or do you know?
          A.      I think she was about to testify.
          Q.      Okay. So, y’all talked about the fact that you were going to testify that
he, essentially, confessed to you?
          A.      Well, she was—she was asking me, did he tell you about the murder? 
Or this and that? And I told her, yeah. But as far as going, you know,
details, I didn’t tell her any details. She was asking me, you know, are
you testifying against Gilbert? And she was telling me, you know, what
he had told her.
          After this exchange, the jury was dismissed for the day and defense counsel
moved to strike the testimony of Parra and Blakely on the ground that they violated
“the Rule.” The State explained to the trial court that both witnesses had arrived at
the courthouse on the day after the court gave its admonishments to the witnesses and
that they had not been in the courtroom to hear the admonishments. However, the
prosecution stated that it had warned the witnesses not to talk to one another about
their testimony. 
A.     Standard of Review and Applicable Law
          Rule of Evidence 614, commonly known as “the Rule,” provides for the
exclusion of witnesses from the courtroom during trial. Tex. R. Evid. 614. The
purpose of Rule 614 is to prevent the testimony of one witness from influencing the
testimony of another. Russell v. State, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005);
Phillips v. State, 64 S.W.3d 458, 459 (Tex. App.—Houston [1st Dist.] 2001, no. pet.). 
Once Rule 614 is invoked, witnesses are instructed by the court that they cannot
converse with one another or with any other person about the case, except by
permission from the court. Tex. Code Crim. Proc. Ann. art. 36.06 (Vernon 1981);
Russell, 155 S.W.3d at 179. Further, the trial court must exclude witnesses from the
courtroom during the testimony of other witnesses. Tex. R. Evid. 614. However, if
a witness violates this rule, the trial court still has discretion to allow testimony from
the witness. Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). On appeal, the
trial court’s decision to admit testimony will not be disturbed absent an abuse of that
discretion. Id. 
          In reviewing the trial court’s decision to allow testimony, we determine
whether the appellant was harmed or prejudiced by the witness’s violation. Id. Harm
is established by showing that (1) the witness actually conferred with or heard
testimony of other witnesses and (2) the witness’s testimony contradicted the
testimony of a witness from the opposing side or corroborated testimony of a witness
she had conferred with or heard. Id. 
B.      Analysis
          The first prong of the test for harm has been met; Blakely admitted to talking
to Parra about the case after the Rule was invoked. Under the second prong, while
Parra and Blakely’s testimonies corroborated each other in that they both testified that
appellant confessed to killing April, their testimonies consisted of separate
confessions given under different circumstances with separate facts revealed in each.
          Parra testified that appellant had originally maintained that April was killed in
his car during a drive-by shooting. Parra testified that, when she continued to
question him as to why there were no bullet holes in his car, appellant finally stated,
“I killed her.” Parra testified that she asked him why and that he would not respond. 
This confession came in January 2001. 
          In November 2001, Blakely and appellant began dating. Blakely testified that
she asked about April’s death and that appellant initially explained that April’s ex-boyfriend was very jealous and had stabbed appellant and shot April. Blakely
testified that she felt he was hiding something, so she continued to question him. 
Finally, during a telephone conversation, Blakely threatened to end the relationship
if appellant did not tell the truth. Appellant agreed but insisted that she come to his
house because his telephone had been tapped. Blakely testified that, at the house,
appellant stated that he believed April was cheating on him because he found her in
his car with some of his friends. Appellant told Blakely the details surrounding his
taking April to Idylwood Park and then shooting her three times in the chest. 
Appellant then took Blakely to Idylwood Park, where he showed her the location of
the incident (by a tree near a ditch) and told her specific details about April’s body
(such as the blood he saw in her mouth).
          In Bell, a police investigator remained in the courtroom during the trial even
though Rule 614 had been invoked. Bell, 938 S.W.2d at 50. However, because his
testimony and opinions were “clearly . . . based upon his own experiences and
investigations” and not “based upon any testimony from appellant’s witnesses,” and
because there was no evidence to suggest the testimony he heard influenced him, the
court found no abuse of discretion in allowing his testimony. Id. at 51. 
          Here, as in Bell, there is no evidence that Parra or Blakely’s testimony was
influenced by the other, and both had vastly different experiences to relate to the
court. Parra and Blakely discussed different facts that Gilbert had related to them,
and only one had details of the murder. There were very few details that the two had
in common that would raise doubts as to the veracity of either witness’s testimony. 
It was well within the trial court’s discretion to decide whether the testimony would
be allowed to stand.
          We conclude that the trial court did not abuse its discretion in admitting the
testimony of Blakely and Parra because, even if they violated the trial court’s
instructions by conversing with one another, there is no evidence that appellant was
harmed or prejudiced by the violation. Id. 
          Appellant’s second issue is overruled.
 
Hearsay
          In his third, fourth, and fifth issues, appellant contends that the trial court erred
by allowing hearsay into evidence on multiple occassions over timely objections.
A.      Standard of Review and Applicable Law
          We review the trial court’s admission of testimony under an abuse of discretion
standard. Salazar v. State, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will
uphold the trial court’s decision unless it lies outside the “zone of reasonable
disagreement.” Id. 
          Hearsay is a statement, other than one made by the declarant while testifying
at trial, that is offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). 
An extrajudicial statement or writing that is offered for the purpose of showing what
was said rather than for proving the truth of the matter stated therein does not
constitute hearsay. Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995);
see Ellis v. State, 99 S.W.3d 783, 788 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d). 
          Hearsay statements are generally inadmissible. Tex. R. Evid. 802. However,
there are a number of exceptions to this general proscription. See Tex. R. Evid. 803. 
Determining whether an out-of-court statement falls under an exception to the hearsay
rule is within the trial court’s discretion. Coffin v. State, 885 S.W.2d 140, 149 (Tex.
Crim. App. 1994).
B.      Analysis
          In his third issue, appellant contends that the trial court erred in admitting
Sergeant Peters’s testimony concerning the information he received from Crime
Stoppers as hearsay.
          Sergeant Peters testified that, on November 3, 2000, the day after the murder,
he received a call from Crime Stoppers reporting that April had been shot by a
“Gilbert Martinez.” Sergeant Peters testified that appellant initially became a suspect
based on that information. 
          Testimony by a police officer offered to explain how the officer came to
suspect the accused, and not offered for the truth of the matter asserted, is not
hearsay. Dinkins v. State, 894 S.W.2d at 347. The Crime Stoppers tip was offered
to show how Sergeant Peters began to suspect appellant, not to prove that appellant
was guilty of the crime. Sergeant Peters’s testimony was not hearsay and therefore
the trial court did not abuse its discretion in overruling appellant’s objection. 
          In appellant’s fourth and fifth issues, appellant contends that Albert Castillo’s
testimony about his conversation with April and her demeanor in his car on the
evening of her murder was hearsay. Castillo testified that April told him that she
wanted to leave appellant and that she sounded scared when appellant approached. 
Appellant argues that this testimony suggested that “appellant was violent and bad-tempered, making it more likely that he killed her.” 
          As the State contends, these statements fall under the “state of mind”
exception. Hearsay statements relating to the declarant’s existing state of
mind—such as mental feelings or intent—are generally admissible when that conduct
is relevant to some aspect of the case. Tex. R. Evid. 803(3); Martinez v. State, 17
S.W.3d 677, 688 (Tex. Crim. App. 2000). Castillo’s testimony that April was scared 
was a statement of her then existing state of mind, and hence subject to the exception. 
There was no “statement of memory or belief to prove the fact remembered or
believed,” which would have made the statement inadmissible. Tex. R. Evid. 803(3).
          We conclude that the complained-of statements to which Castillo testified
indicated complainant’s state of mind at the time they were made (i.e., her fear and
intentions of leaving appellant) and were, therefore, admissible under Rule of
Evidence 803(3). Accordingly, we hold that the trial court did not abuse its discretion
in admitting the testimony.
          Appellant’s third, fourth, and fifth issues are overruled.
 
 
Conclusion
          We affirm the judgment of the trial court. 
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.

Publish. See Tex. R. App. P. 47.2(b).